[Sac. No. 4404. In Bank.—August 21, 1930.]

W. D. BARHAM et al., Respondents, v. C. E. WIDING, Appellant.

Brown & Chamberlain for Appellant.

Joseph A. Brown and Hugo McKinley for Respondents.

Hadsell, Sweet & Ingalls, Redman, Alexander & Bacon and Hartley F. Peart, *Amici Curiae,* for Appellant.

PRESTON, J.—In this cause that portion of the opinion of Mr. Justice Thompson, heretofore rendered by the Honorable District Court of Appeal for the Third Appellate District, which contains a statement of the facts and issues involved, as well as its disposition of appellant's contentions with reference to admissions of alleged prejudicial evidence and insufficiency of the evidence to support the verdict, has our approval and is hereby adopted as a portion of the opinion of this court herein as follows, to wit:

"This is an appeal from a judgment against the defendant for damages resulting from malpractice in the extracting of a tooth.

"The defendant was a licensed dentist practicing his profession at Modesto. At the request of the plaintiff, W. D. Barham, he extracted the left lower first molar tooth of said plaintiff. For the purpose of the operation a local anesthetic was administered by means of a hypodermic injection of novocaine. The needle was twice inserted in the gum of the patient at a point over the ramus or ascending prong of the left lower jaw bone near the

diseased tooth. After the tooth had been extracted a pyorrhea pus pocket was discovered on the distal root. The patient bled quite profusely from the socket from which the tooth had been removed. He subsequently became so weakened from the loss of blood that he was confined to his bed. The dentist was unable to control this hemorrhage and after a few days of ineffectual treatment turned the patient over to a physician by the name of R. Stewart Hiatt. For the first day after the extracting of the tooth the dentist failed to pack with medicated gauze the socket from which the molar had been removed. Later this was done and the socket was periodically cleansed with iodoform. After five or six days an infection of the gum and jaw developed. This was indicated by a swollen and inflamed jaw in the vicinity of the socket from which the tooth had been removed and by increased temperature. When Dr. Hiatt took charge of the case ten days after the tooth had been extracted he made a careful examination and found the patient weak, with an abnormally rapid pulse, temperature 104 degrees and a large abscess on the lower left jaw. The doctor testified in this regard that the abscess 'filled the whole side of the throat and up into the soft palate. . . . (There was) apparently a lot of pus.' He then designated the locality of the primary infection as the point where the hypodermic needle had been inserted in the gum. 'Q. And the infection surrounded the area which you have encircled (on the diagram)? A. Yes, right around here. . . . That was the center of the abscess; it was deep, very deep, so that it must have been necessary that the infection was introduced . . . on a needle, or perhaps an unsterile solution, because the pus was found very, very deep. Q. So that, Doctor, your opinion then is that the infection was introduced either by the hypodermic needle inserted at that point by the defendant, Widing, or by the solution that he employed in that needle? A. That is correct.' Dr. Hiatt also testified from his examination of the socket from which the tooth had been removed that this socket was not the seat of the infection. From the result of this infection the patient lost seven lower teeth and a portion of his lower jawbone. A necessary operation resulting therefrom left an unsightly permanent scar on the left side of his face. It appears that it may be impossible to replace

with a serviceable plate the teeth which were thus lost. He was ill, confined to a hospital, suffered severe pain and his life was despaired of. He also incurred great expense on this account. The plaintiff, however, recovered, but for many months was impaired in health and body. The jury rendered a verdict of $8,000 in his favor. From the judgment, which was accordingly entered, the defendant has appealed.

"The complaint charged the defendant with negligence in extracting the tooth and in the use of the hypodermic needle which was employed in that operation resulting in an infected jaw and the sustaining of the injuries above referred to. No demurrer to the complaint was filed. Subsequently, upon motion of the plaintiff, and before the trial, over the objection of the defendant, an amendment to the complaint was permitted to be filed charging the defendant with negligence in connection with the extracting of the tooth in 'thereafter treating and caring for the same.' This amendment was filed more than a year after the operation had been performed and the defendant pleaded the statute of limitations to this last specific charge of negligence. During the trial evidence respecting the treatment of the jaw, on the part of the defendant, after the tooth had been removed, was adduced over the objection of appellant. Before the conclusion of the trial the court struck this evidence from the record and instructed the jury to disregard it.

"The appellant contends that (1) the admission of evidence regarding improper treatment of the patient after the operation of extracting the tooth had been completed, was prejudicial error in spite of its subsequent elimination from the record, since it constituted a separate cause of action which was barred by the statute of limitations; (2) the judgment is not supported by the evidence since there is a total absence of medical expert testimony to the effect that the operation and treatment of the patient in the extracting of the tooth did not conform to the standard accepted method of the profession in that vicinity; (3) the court erred in giving and refusing certain instructions to the jury.

"Under the original pleadings in this case there was no error in admitting evidence of the defendant's treatment of the patient immediately after the removal of the tooth.

All the evidence which was adduced with respect to the treatment subsequent to the operation of extracting the tooth was competent under the original complaint. ▇ In our opinion the amendment to the complaint did not alter or add to the issues. It will be observed the original complaint specifies two distinct charges of negligence; first, that the defendant was negligent in the operation of extracting the tooth; second, that he was negligent in using the hypodermic needle by means of which he administered a local anesthetic. In the absence of a demurrer these allegations were specific enough upon which to admit evidence of negligence in the treatment of the patient incident to the operation. ▇ This case was tried on the theory that it is a part of a dentist's professional duty to treat the bruised and bleeding socket from which a tooth has been removed. It is only common knowledge to declare this is a necessary part of the professional operation of extracting a tooth. If a dentist fails to use ordinary precaution, in subsequently protecting the bruised and sensitive socket against infection from foreign matter, or fails to use reasonable care to stop unusual and profuse bleeding from the socket as the result of extracting the tooth, he will be guilty of negligence in the operation. These incidents to the operation of extracting a tooth are just as essential as sterilizing the parts and sewing up the abdominal incision after performing an operation for appendicitis. The restoring of a healthy condition to the parts which are injured in the performance of an operation is just as necessary as the removal of the diseased portion. Both proceedings are necessary parts of the same professional operation. A failure to reasonably sterilize and treat the socket from which a tooth has been removed, to prevent infection, will ordinarily render a dentist liable for malpractice if the omission results in injury to the patient. ▇ If, in spite of reasonable care on the part of the dentist to prevent infection, it, nevertheless, develops, or infection appears from a cause independent of the operation of extracting the tooth, the dentist will not become liable for negligence in performing the operation, except that the subsequent treatment of the disease may constitute a different cause of action. There is a clear distinction between a liability which results from the careless performance of an operation or an omission to use reason-

able care in the exercise of professional acts connected with the extracting of a tooth which causes infection, and the improper treatment of an infection which subsequently develops without being attributable to the negligent operation of the dentist in extracting the tooth.

"In this case it is apparently the theory of the appellant that the fatal infection did not occur from the use of an unsterile needle or from contaminated fluid used in administering the anesthetic, but that it developed on account of the patient's tendency to bleed profusely as a result of extracting a tooth. It is claimed he is what the profession commonly terms 'a bleeder,' and that the dentist was, therefore, unable to control the hemorrhage. Evidence was adduced to show that during the first day following the operation the socket from which the molar had been removed was not sterilized or packed with gauze and that this omission left the inflamed and sensitive socket subject to infection from food or foreign matter. Certainly this evidence was competent to rebut the appellant's theory of a defense. The evidence is uncontradicted that the defendant did not pretend to treat the patient for a period of time longer than five or six days after the operation was performed. Moreover, he consulted Dr. Morgan regarding the hemorrhage on the day following the operation and Dr. Morgan promptly took charge of this feature of the case. Aside from the evidence of failure during the first day to pack the socket with sterilized gauze, our attention is called to no evidence of improper treatment on the part of the dentist following the operation. It was, therefore, unnecessary for the court to have stricken this evidence from the record. Moreover, the jury were clearly instructed that they were not permitted to render a verdict against the defendant based upon alleged improper treatment subsequent to the operation of extracting the tooth. The facts of the case of *Wetzel* v. *Pius*, 78 Cal. App. 104, upon which the appellant relies, is readily distinguishable from those of the present case. That case contains nothing which we deem to be in conflict with the foregoing statement of the law.

"The appellant asserts that the evidence is not sufficient to establish negligence on his part because there is no direct testimony that the needle or solution which was used in administering the anesthetic was unsterile; that a dentist,

like a physician, is required to have and use only the degree of learning and skill which is ordinarily possessed by dentists of good professional reputation in that locality. ▇ This is the rule with respect to physicians. (*Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654]). Undoubtedly the same rule applies to dentists. The jury was clearly instructed to this effect. ▇ It is equally true that cases which depend upon knowledge of the scientific effect of medicine, or the result of surgery, must ordinarily be established by expert testimony of physicians and surgeons. (*Perkins* v. *Trueblood*, 180 Cal. 437 [181 Pac. 642].) This rule, however, applies only to such facts as are peculiarly within the knowledge of such professional experts and not to facts which may be ascertained by the ordinary use of the senses of a nonexpert.

▇ "In the present case the record will not support a theory that the infection which caused the injury to Mr. Barham's jaw, teeth and health originated in the socket from which the tooth was removed. It is almost uncontradicted that this was not the seat of the infection. This socket and the suppressing of the hemorrhage from that source were the only objects to which the testimony of appellant's subsequent treatment was directed. The evidence is conclusive of the fact that this socket was not the source of the infection. We must, therefore, assume the dentist was not guilty of negligence in his subsequent treatment of the case. It is true that an unusual loss of blood might so weaken a patient that his lack of resistance would make him more susceptible to infection than one who was in normal condition. A great loss of blood might, therefore, become a remote contributing cause of the infection. But it may not be said the hemorrhage was the proximate cause of the infection. The judgment in this case must be supported, if at all, upon the theory of appellant's negligence in failing to sterilize his hypodermic needle and the mouth and gum of the patient before performing the operation of extracting the tooth. It is true that both the dentist and his nurse testified that the usual process of sterilization was followed. It is equally true that there is no direct evidence that he failed to sterilize either the needle or the surface of the flesh where it was inserted. Barham

does state that he did not remember that the dentist sterilized his mouth or gum.

"Under the circumstances of this case there is a remote possibility that the infection developed from some cause other than the defendant's failure to sterilize the needle or the gum into which it was inserted, but the evidence is sufficient upon which to warrant the jury in finding that it was caused by his negligence in failing to follow these reasonable precautions in spite of his testimony to the contrary. The jurors were entitled to accept the solution to which these circumstances led them in preference, even, to the positive statements of the defendant and his nurse to the contrary. ■ After the verdict of a jury has been fairly rendered, all the circumstances of the case, together with every reasonable inference which may be drawn therefrom, will be marshaled in support of the judgment. Because of the very subtleness of the origin and development of disease, less certainty is required in proof thereof. As the court says in the case of *Dimock* v. *Miller*, 202 Cal. 668, 671 [262 Pac. 311, 312]:

" 'If . . . it is necessary to demonstrate conclusively and beyond the possibility of a doubt that the negligence resulted in the injury, it would never be possible to recover in a case of negligence in the practice of a profession which is not an exact science.'

■ "It is not necessary in the trial of civil cases that the circumstances shall establish the negligence of the defendant as the proximate cause of injury with such absolute certainty as to exclude every other conclusion. It is sufficient if there is substantial evidence upon which to reasonably support the judgment. (*Ley* v. *Bishopp*, 88 Cal. App. 313, 316 [263 Pac. 369].)

"In this case no question is raised regarding the professional skill of the dentist. It is conceded that he was reasonably learned and skilful in his profession. But it is asserted that he was negligent in failing to sterilize the hypodermic needle and the gum into which he inserted the instrument. There is no conflict regarding the fact that infection of the jaw caused the injuries to Barham. It is conclusive that this infection developed within a few days after the operation on the ramus of the jaw at just the point where the needle was inserted, and not in the socket

from which the tooth had been removed. Dr. Hiatt, the expert physician who personally examined the condition of the patient ten days after the operation, testified, as heretofore related, that the seat of the infection was the very point where the needle was inserted, and that in his opinion the infection was caused by the use of an unsterile needle, the solution, or a failure to sterilize the gum where the needle was inserted. With respect to the origin of the infection, the doctor further testified: 'You found, did you, doctor, that was the primary place of infection, around the ramus? A. That was the place of infection. Q. Therefore, you got drainage at that point? A. Yes sir. Q. Did you form any opinion as to whether or not any infection that came to the socket of the tooth was merely secondary to the infection of the ramus? A. When I examined him, there was no pus around the socket of the tooth, the pus was all back around the ramus of the jaw, so I would say that the primary infection was around the ramus of the jaw.'

 "It was not necessary for any dentist or physician to state that the conduct of the defendant was negligent or in conflict with the usual established practice of the profession in that vicinity to administer a local anesthetic for the purpose of extracting a tooth without sterilizing the needle, or the flesh into which it is inserted. The court will take judicial knowledge of the necessity to use ordinary care to procure sterilization under such circumstances. This case was tried upon the theory that everyone concerned recognized this duty. We are, therefore, of the opinion that the evidence will support the judgment in this regard."

 Appellant claims that the giving of the following instruction at the request of plaintiffs, with omission therein of the words "negligently" or "carelessly and negligently," at the point where we have below inserted them in parenthesis, constituted prejudicial and reversible error: "I instruct you that if you believe from the evidence that Doctor Widing, the defendant (carelessly and negligently) used or employed either an unsterile hypodermic needle or solution in injecting a local anesthetic into the mouth of plaintiff . . . and that thereby and as the proximate result thereof, and proximately caused thereby, infection was introduced in the mouth, plaintiffs are then entitled to recover from defendant as damages such sum as in your judgment, considering all

of the evidence, will justly compensate them for any damage you may believe them to have suffered."

In other words, citing numerous authorities in support of the well-known rule that a so-called "formula" instruction must contain all the elements essential to a recovery and the absence of any one of such elements may not be compensated for nor cured by a reference thereto, in other instructions correctly and fully stating the law (*Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237], and cases therein cited), appellant urges that the challenged instruction was fatally defective and incapable of being remedied by other portions of the charge in that it definitely instructed the jury, without reference to the remainder of the charge, that plaintiffs were entitled to recover if they found that defendant "used or employed either an unsterile hypodermic needle or solution" which proximately cause the infection from which the injuries resulted, whereas obviously the fluid used as an anesthetic might have been contaminated or unsanitary in spite of reasonable care on the part of the dentist and his nurse or possibly the needle may have communicated disease to the jaw after the usual precautions had been taken to sterilize it.

When the fact is considered, however, that the entire charge given was exhaustive and covered the subject thoroughly and completely, it is inconceivable that any jury could have been misled by the mere omission of these one or two words in said instruction. Both before and after it was given, the jury time and again received a clear and correct exposition of the law applicable in this case. They were specifically instructed that "plaintiffs can recover, it at all, only upon proof of negligence or carelessness" on the part of defendant; that it must appear from the evidence that the injuries sustained "were occasioned by the carelessness or negligence on the part of defendant as charged in the complaint" and numerous other instructions were given to the same effect. The whole field was gone over not once, but many times, and to our mind there is no possibility that any misconception could have formed in the mind of any juror by reason of the wording of the instruction under consideration. Indeed, the language of the latter portion of the opinion in *Douglas* v. *Southern Pac. Co., supra,* wherein the court refused to reverse the case because of the alleged

error in the so-called formula instruction there in question, is applicable here.

Furthermore, under the evidence it became apparent that, as observance of the ordinary standards of practice would preclude the use of an unsterile needle or solution, such use could be due only to carelessness or negligence; hence the inclusion of the alleged omitted words was not absolutely essential to a proper charge.

We have also examined the instructions with care in the light of the other criticisms directed against them by appellant. As we find the entire charge to be free from prejudicial error, further discussion is unnecessary.

The judgment is affirmed.

Langdon, J., Curtis, J., Seawell, J., Richards, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.

Shenk, J., and Waste, C. J., dissented.