[Civ. No. 7914. First Appellate District, Division One.—February 26, 1932.]

WILLIAM ROBERTS, Respondent, v. E. R. PARKER et al., Appellants.

John C. Stevenson for Appellants.

James H. Boyer for Respondent.

KNIGHT, J.—A jury awarded respondent damages in an action for alleged malpractice and judgment was entered

accordingly, from which this appeal was taken. The amount of the award is not questioned, but as grounds for reversal appellants contend that the evidence is insufficient to establish liability on their part, and that the trial court erred in ruling upon the admissibility of certain evidence.

It appears that respondent, a man twenty-eight years of age, had been suffering for a day or two from an aching tooth, and on Tuesday, June 10, 1930, he called at appellants' dental office in Oakland to have it taken care of. At that time the gum surrounding the tooth was swollen, much inflamed, and extremely sore. After examining the tooth, and without taking any X-ray thereof to determine the cause of the inflammation and swelling, appellant Dr. Baer, who took charge of the case, injected novocaine with a hypodermic needle in the inflamed and swollen area of the gum, in two places on each side of the jawbone, and thereupon extracted the tooth. Respondent was then given a mouth wash and told to sit down in the office for a while to rest; and upon leaving he was given some pills which he was directed to take at certain intervals. However, the removal of the tooth and the treatment administered did not relieve the trouble. On the contrary, it grew much worse and more painful, and within the four succeeding days he called at appellants' office on three occasions for further treatment. On the day following the extraction he was attended by a different dentist connected with the office, who cleansed the wound and directed him to take more pills. The next day (Thursday) he saw Dr. Baer, who merely examined respondent's mouth and gave him more pills to take, stating, according to respondent's testimony: "These will probably fix you up all right. I think it is something that is going to have to wear off." On the following Saturday, June 14, 1930, he again visited appellants' office, at which time he was attended by the office nurse, and according to respondent's testimony she simply looked at his swollen and inflamed jaw, shook her head and gave him more pills. Despite the treatment administered, respondent's condition grew rapidly worse. The inside of his mouth in the vicinity of the wound caused by the extraction became greatly inflamed and extremely sore; and on account of the intense pain therefrom he was unable to work or sleep. On Sunday, the fifth day after the tooth was extracted, the side of his face started to

swell and grow purple; and on Monday the swelling extended from the eye to the throat, the eye being completely closed; whereupon he consulted other dentists and oral surgeons in San Francisco, who sent him to a hospital. Upon arriving at the hospital it was found that his jawbone was becoming infected with a disease known as osteomyelitis, and within the next few days he was placed under a general anaesthetic and certain operations were performed for the removal of the diseased bone. The operations failed to retard the progress of the disease, however, and after remaining in that hospital for a week he was transferred to another, where he remained for thirty-six days, during which time two more similar operations were performed to remove diseased bone. Ten days after the second operation he was able to leave the hospital, but his face was still swollen, sore and painful. As a result of the disease and the operations which were performed to exterminate it, respondent suffered intense pain, it being necessary, as part of the treatment, to drain the infected bone for several days from both the inside and the outside of his mouth. Moreover, he lost all sense of feeling in the regions of the lower right jaw, and the remaining teeth on that side were loosened.

As to the law of the case, there is no legal distinction between an action against a dentist for malpractice and a similar one against a physician, the rules of law governing the one being applicable to the other (*Barham* v. *Widing,* 210 Cal. 206 [291 Pac. 173]), and it is well settled that neither can be held to guarantee the results of his professional services. However, it is equally well settled that in undertaking the treatment of a patient the practitioner impliedly contracts and represents not only that he possesses the reasonable degree of skill and learning possessed by others of his profession in the locality, but that he will use reasonable and ordinary care and skill in the application of such knowledge to accomplish the purpose for which he is employed; and that if injury is caused by a want of such skill or care on his part he is liable for the consequences which follow. (*Houghton* v. *Dickson,* 29 Cal. App. 321 [155 Pac. 128]; *Nelson* v. *Painless Parker,* 104 Cal. App. 770 [286 Pac. 1078]; *Perkins* v. *Trueblood,* 180 Cal. 437 [181 Pac. 642]; *Hesler* v. *California Hospital Co.,* 178 Cal. 764 [174 Pac. 654]; *Ley* v. *Bishopp,* 88 Cal. App. 313 [263 Pac.

369]; *Patterson* v. *Marcus,* 203 Cal. 550 [265 Pac. 222].)

■ Furthermore, it is held that actionable negligence in cases of this kind consists in doing something which the practitioner should not have done, or in omitting to do something which he should have done; and that what is or is not proper practice in examination and treatment, or the usual practice and treatment, is a question for experts and can be established only by their testimony. (*Perkins* v. *Trueblood, supra.*)

■ In the present case there was ample expert testimony introduced to prove that inflammation, swelling, and pain in the gums are definite symptons of infection, and that where such conditions are found to exist it is considered dangerous by the dental profession to inject an anaesthetic into the gum with a needle and extract the tooth without first taking an X-ray to determine the cause and extent of the infection, or without first adopting some means to reduce the infection; and that if the local anaesthetic is injected blindly at the base of a tooth which afterward proves to be infected it is likely to scatter the infection, which if carried into the blood stream will produce osteomyelitis of the jawbone. Therefore, in view of the swollen, highly inflamed and extremely sore condition of respondent's gum in the vicinity of the aching tooth at the time he first visited appellants' office, and of the serious effects following the removal of the tooth, it is evident that the jury was justified in concluding as it did that the attending dentist did not exercise ordinary or reasonable skill and diligence in injecting the local anaesthetic in four different places in the gum and extracting the tooth without first taking an X-ray to determine the cause of its inflamed and swollen condition, or without first taking some preliminary measures to reduce the infection; and that the failure so to exercise such ordinary and reasonable skill and diligence was the direct cause of bringing about the acute condition following the extraction.

Appellants contend, however, that regardless of the question of the failure to exercise a reasonable degree of skill and care in extracting the tooth, the injection of the anaesthetic and the extraction of the tooth had nothing whatever to do with the origin of the osteomyelitis of the jawbone, because, as they claimed, respondent was doubtless afflicted therewith, either in an active or dormant form, at the time of

his first visit to their office. There was some testimony given in support of such theory, but there was also testimony given in opposition thereto which is legally sufficient to sustain the contrary view. Without attempting any analysis thereof, it will suffice to refer only to the testimony of the surgeon who treated respondent upon his arrival at the hospital some nine days after the extraction, wherein he stated in substance that although respondent at that particular time was suffering from a "badly diseased mouth" and that in his opinion the case was "bordering on osteomyelitis . . . and looked as though it was going to resolve itself into that", the disease had not yet manifested itself in definite, active form. And even though it be assumed that the disease was present in dormant form at the time the tooth was extracted, such fact would not absolve appellants from the finding of negligence because admittedly the existence of the disease could have been readily and easily ascertained by the use of the X-ray; and if it had been so ascertained, the treatment of the disease, medically and surgically, both before and immediately after the tooth was extracted, to prevent the progress of the disease and for its extermination, would necessarily, according to the expert testimony, have been entirely different from that administered by appellants.

Appellants point out also that according to some of the expert testimony, where an osteomyelitis of the jaw exists extraction of the teeth is an approved method of treatment to bring about proper drainage. Upon this point, however, the evidence is also conflicting, other testimony being given to the effect that extraction under such conditions will very likely exacerbate or aggravate the disease. It is furthermore contended in substance that it is pathologically impossible to produce osteomyelitis of the jaw by the insertion of a local anaesthetic into the gums with a hypodermic needle. But here, too, there is a conflict in the evidence, some testimony being given to the effect that on account of the porous consistency of the jawbone it is readily susceptible to poison from the infected tooth.

According to some of the testimony introduced on behalf of appellants, there is, of course, a remote possibility that the osteomyelitis of the jawbone developed from some cause other than appellants' failure to use reasonable precautions and ordinary care and skill in extracting the tooth

and treating the wound following the extraction. But as said in *Dimock* v. *Miller*, 202 Cal. 668 [262 Pac. 311], because of the subtleness of the origin and development of the disease it is not necessary that the evidence shall demonstrate conclusively and beyond the possibility of a doubt that the injuries complained of are the result of negligence, for if such were the rule it would never be possible to recover in a case of negligence in the practice of a profession which is not an exact science. Therefore, if in spite of the testimony tending to show a different origin of the disease there be testimony to sustain the opposite conclusion which has been reached by the jury, its verdict must be sustained. In other words after the verdict of the jury has been fairly rendered, all the circumstances of the case, together with any reasonable inference which may be drawn therefrom, will be marshaled in support of the judgment. (*Barham* v. *Widing, supra.*) Measured by the foregoing rules the circumstances of the present case are legally sufficient to sustain the jury's verdict. (*Dimock* v. *Miller, supra; Barham* v. *Widing, supra; Ley* v. *Bishopp, supra.*)

The remaining point relates to an asserted variance between the allegations of the complaint as to the specific negligent acts relied upon and the evidence introduced by respondent in support thereof. We find no merit in the point. The amended complaint charged appellants with "carelessly and negligently extracting an aching tooth . . . "; also with having "carelessly and negligently injected a local anaesthetic, at four places, into plaintiff's said lower, right jaw, immediately adjoining said tooth, in such a manner as to poison and infect the said jaw . . . "; furthermore, with having "carelessly failed and neglected (after extracting the tooth) to properly or at all cleanse or disinfect the cavity in said jaw, and the membrane surrounding said cavity . . . and failed and neglected to use reasonable or ordinary or any care in their treatment of the gums or lower jaw of plaintiff, adjoining said tooth, immediately prior to the extraction of said tooth and at all times thereafter". So far as the record shows there was no demurrer interposed to the amended complaint; and obviously the foregoing allegations were sufficiently comprehensive to permit the

introduction of the evidence upon which the case was decided.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 26, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1932.