[Civ. No. 6297. Third Appellate District.—February 6, 1941.]

SYDNEY ANDERSON et al., Appellants, v. FRANCIS M. STUMP, Respondent.

T. F. Peterson and H. L. Preston for Appellants.

Hadsell, Sweet, Ingalls & Lamb and Paul A. Brunk for Respondent.

MONCUR, J., *pro tem.*—Plaintiffs have appealed from a judgment of dismissal entered by the trial court after granting a motion for nonsuit. Plaintiffs' complaint was in three counts, alleging negligence on the part of the defendant physician in his treatment of plaintiff Doris Anderson. The complaint sets forth the usual allegations as to the plaintiffs engaging the defendant to attend Mrs. Anderson; that she was pregnant and shortly to be delivered of a child; and that she placed herself under the care of the defendant in the Knapp Hospital in Crescent City.

In the first cause of action it is alleged in general terms that the defendant, through his carelessness and through his want of skill, caused her to suffer from a serious streptococcic infection, and that her mental suffering was aggravated by defendant's claim that she was suffering from a preexisting gonorrhoeal infection.

In the second cause of action it was alleged that Mrs. Anderson was placed in an unsterile bed and her pelvic regions were not sterilized. The complaint alleged that when defendant arrived at the hospital, he made a vaginal examination of Mrs. Anderson, without proper or any precautions; that as a result she suffered a severe streptococcic infection, and that her condition was aggravated by defendant's false claim that she was suffering from a preexisting gonorrhoeal infection.

In the third cause of action it is alleged that plaintiff wife placed herself entirely under defendant's care and direction; that the result stated above followed, and that the result was such as did not occur when a physician used proper care.

Defendant answered, admitting his professional capacity, and denying all of the other allegations of the complaint.

The trial was had before a jury, and at the conclusion of plaintiffs' case in chief, the trial court granted a nonsuit as to all three causes of action, upon the ground that no negligence proximately causing Mrs. Anderson's injuries was proven against the defendant.

The testimony adduced on behalf of plaintiffs tended to prove the situation as follows: In July, 1934, defendant attended Mrs. Anderson at the birth of her first child, a daughter, who was four and one-half years old at the time of trial. No untoward results were experienced in her accouchement at that time, except that she developed hemorrhoids, and was operated upon for that condition by defendant early in 1935. That she has always been in good health, and was a vigorous, athletic young woman. She consulted defendant on February 22, 1936, with regard to her pregnancy, and made arrangements with him to attend her at her confinement. Mrs. Mary Haskill, Mrs. Anderson's mother, came from her home in Camas, Washington, to stay with her daughter. During the period of about ten days immediately before her confinement, Mrs. Anderson was in close touch with defendant, and was examined by him on several occasions. That up to that time her condition was reported as satisfactory in all respects by defendant, and he told Mrs. Haskill there was nothing to to worry about. She went to the hospital about 10 o'clock on the night of July 4, 1936, was undressed and put to bed, given a routine enema and the pubic hairs shaved. Defendant arrived some two hours later and made a vaginal examination with a gloved hand. He was wearing his street clothing. The bed linen was neither changed nor sterilized, and no other precautions were taken. Mrs. Anderson was not washed or scrubbed. She was taken to the delivery room immediately thereafter, and in about an hour and a half her baby was born, without untoward event.

On the evening of July 7th she became violently ill, and by nightfall was in a serious condition. Defendant gave her a foreign protein injection of serum, which raised her temperature, then caused a severe chill. In about a week an abscess on the right side of the pelvic region developed. She was treated for this condition at the hospital for nearly three weeks and then allowed to return to the apartment where she had been staying in Crescent City, and where she remained for ten days longer.

Later when she was ready to leave the apartment with the intention of going to Camas, Washington, she learned from her husband that the defendant contended she had been suffering from gonorrhoea. On going to defendant's office, and inquiring about the gonorrhoea infection, this conversation occurred:

"Q. What was the conversation you had with Dr. Stump? A. I asked him if gonorrhoea was the cause of my having this infection. He says 'Oh, just forget about it; you have not got it now and I would not want to break up your home'."

The foregoing is not a statement of all of the evidence. Under the well established rule relative to the granting of nonsuits we have stated the evidence most favorable to plaintiffs and disregarded conflicting evidence, as it was the duty of the trial court to do. "A motion for a nonsuit is in effect a demurrer to the evidence, and the court must assume that all the evidence received in favor of plaintiff relevant to the issues is true. All presumptions, inferences and doubtful questions must be construed most favorable to plaintiff's case. The rule is so well settled that it is not necessary to enlarge upon it." (*Richardes* v. *Richardes,* 211 Cal. 392, at p. 394 [295 Pac. 816].)

It is the contention of defendant that there was no testimony of experts establishing the proximate cause of the infection which resulted from any action upon the part of Dr. Stump in connection with the birth of the child. Appellant contends that under the authorities of this state such expert testimony, under the circumstances shown herein, was not necessary, or if it was, it was established through the testimony of Dr. Stump by plaintiff under section 2055 of the Code of Civil Procedure of this state.

Appellants cite in support of their contention the cases of *Barham* v. *Widing,* 210 Cal. 206 [291 Pac. 173], and *Inderbitzen* v. *Lane Hospital,* 124 Cal. App. 462 [12 Pac. (2d) 744, 13 Pac. (2d) 905]. The case of *Barham* v. *Widing, supra,* was an action for damages for malpractice, wherein the defendant, a dentist, was charged with negligence in extracting a tooth, and in the use of the hypodermic needle which was employed in that operation an infection of the jawbone resulted. In that case both the defendant dentist and his nurse testified they sterilized the hypodermic needle and the plaintiff's gum. Plaintiff stated he did not remember their doing so; the infection developed at the site of the injection.

In that case the Supreme Court quoted with approval the following statement of Mr. Justice Thompson in the original decision in the District Court of Appeal, Third Appellate District:

"It was not necessary for any dentist or physician to state that the conduct of the defendant was negligent or in conflict with the usual established practice of the profession in that vicinity to administer a local anesthetic for the purpose of extracting a tooth without sterilizing the needle, or the flesh into which it is inserted. The court will take judicial knowledge of the necessity to use ordinary care to procure sterilization under such circumstances. This case was tried upon the theory that everyone concerned recognized this duty. We are, therefore, of the opinion that the evidence will support the judgment in this regard." (*Barham* v. *Widing, supra.*)

In the case of *Inderbitzen* v. *Lane Hospital, supra,* it is said:

"While it is the general rule that the propriety or impropriety of particular medical treatment can only be established by expert medical testimony, this rule is subject to the exception that if the particular matter is one of general knowledge expert evidence is not necessary." Also it is said in that case: "We will likewise take judicial knowledge of the danger of infection to a woman about to give birth to a child from a vaginal examination performed with unsterilized hands."

Defendant was called by plaintiff as we hereinbefore stated, under section 2055 of the Code of Civil Procedure. During the trial the question arose as to whether, upon a motion for nonsuit, plaintiffs were entitled to the benefit of everything favorable to them gained from examining defendant under that section. Having in mind the fact that Dr. Stump was a practicing physician and was engaged by Mrs. Anderson for the specific purposes of her confinement, it is obvious that he became a material witness in the case. Therefore, it appears clear that under the very circumstances of his employment plaintiffs would be entitled to the benefit of any favorable testimony given by him in the case irrespective of whether it involved expert testimony or that only of a layman. In the case of *Dempsey* v. *Star House Movers, Inc.,* 2 Cal. App. (2d) 720 [38 Pac. (2d) 825], it is said: "While evidence of the defendant under section 2055 of the Code of

Civil Procedure is not binding on the plaintiff, nevertheless, it is evidence in the case to be considered, together with any other evidence in the light most favorable to plaintiff when the court is determining a motion for nonsuit.''·

Considered in the light of the decision in the *Barham* v. *Widing* case, *supra,* a portion of which we have hereinbefore quoted, the question as to whether, at the time the vaginal examination was made of Mrs. Anderson, the glove worn by Dr. Stump was or was not sterilized, is quite material, as is also that as to whether the doctor wore a sterilized gown or made the examination clothed only in his street clothes. The following is the defendant's testimony in that respect:

''Q. When you gave her this examination you spoke of how did you proceed? A. I usually just take off my coat, scrub up my hands, put on a gown, ward gown— Q. I am not asking what you usually do, I am asking you what you did on this occasion? A. That is what I did on this occasion. Q. Tell us again: You scrubbed your hands, is that right? A. Scrubbed my hands, and removed my coat and vest— scrubbed my hands, slipped on a ward gown, they call it—and then scrubbed up and sterilized my hands. Q. You never had on gloves. A. Not before my hands were sterilized. I did at the examination. Q. Where did you get these gloves? A. The nurse gave them to me. Q. In the room where the lady was in or in the wash room? A. I am not positive about that. They give them to you occasionally in the room and occasionally in front of the room. Q. In front of the room? A. Yes. Q. What do you mean by that? A. The room is just across the hall from the scrub-room. She sometimes meets you at the scrub-room as you come out; sometimes at the door; and sometimes in the room. Q. Which one of those places did she give you the glove or gloves on this occasion? A. Well, I have no record of that and I can't say. Q. You have no record and no memory, is that right? A. I don't remember those things; it is three years— Q. I am asking you do you remember? A. I told you I don't remember. Q. Isn't it a fact you only had one glove on? A. That's all you put on. Q. All you put on? A. All we ever use at such a time. Q. What hand did you have the glove on? A. My right—I am right handed. Q. Did you put the glove on your hand or did the nurse put it on? A. I usually put them on. Q. Is that the recognized practice in Del Norte County among physicians that the doctor himself puts the gloves on? A.

Yes. Q. That is the practice, is it? A. Yes. Q. Isn't it the practice that the nurse brings the gloves to the bedside, sterilized and puts them on the doctor's hands. A. No sir. Q. That never happens? A. It does at times. Q. If you don't know where you put the gloves on, how are you so positive she didn't put them on? A. The thing I do not remember—and I think probable—I was waiting for her and while I was waiting I was getting ready—and I put them on myself in cases of that kind. Q. You put them on yourself? A. I frequently do. Q. Where did you get the gloves? A. They have a supply of them in the sterilized dressing room. Q. I am asking you where you got the gloves? A. I got it out of the supplies supplied by the hospital. Q. Are you positive of that? A. Positive. Q. You put it on before you came into the room? A. I may have; I would not say I did or not. Q. What is your best judgment on it? A. We do it either way. Q. In this particular case. It is three years ago as you say. Have you any better recollection as to whether inside or outside? A. I can't say; I might put it on outside or not. Q. Are you positive you put it on yourself? A. Yes. Q. Walked out of the sterilization room, or whatever you call it, into where this lady was? A. Yes. Q. Went through the door? A. Yes. Q. How did you open the door? A. Usually back in and push the door open. Q. Which did you do in this case? A. Backed in and pushed the door open. Q. Are you positive of that? A. Positive. Q. You are positive you backed in the door? A. Yes. Q. Where did you get the smock or gown you call it? A. Out of the hospital supply. Q. Same place you got the glove? A. Yes. Q. When did you put that on? A. Before scrubbing. Q. Before scrubbing? A. Yes. Q. When you came into the room did you have this smock and glove on—both on? A. Yes. . . . Q. Now, doctor, if you went into that room and examined the lady with your street clothes on and only one glove on, would that be the recognized practice in such cases in Del Norte County? A. No, sir. . . . Q. And where was this glove that you made this vaginal examination with— where did you sterilize that? A. They have this auto-clave. That is sterilized under steam pressure. Q. Did you see it sterilized? A. I know it was.

"MR. PRESTON: I move that go out as not responsive to the question.

"WITNESS: No, I didn't watch them sterilize them; I know it was sterilized. Q. Did the nurse give it to you or did you get it from the place where it stays? A. I presume I got it. Q. You got it? A. I think I answered that before. . . .

"MR. PRESTON: It is a fact, isn't it, that at this stage or condition of Mrs. Anderson, just before or after childbirth, she is much more susceptible to infection than otherwise? A. Yes. Q. Your answer is yes? A. Yes, sir. Q. Great care should be exercised at that time to prevent infection. A. Yes."

█ The foregoing quoted testimony particularly considered in connection with the question as to whether the glove used was or was not sterilized, and with all of the other circumstances shown by the evidence and especially the circumstance that the infection developed within the vagina, the question as to whether the glove used was properly sterilized, or was sterilized at all, became one peculiarly within the province of the jury to determine, as did also that as to whether defendant wore a sterilized gown or his street clothes.

In support of the order granting the motion for nonsuit, defendant cites the cases of *Ewing* v. *Goode,* 78 Fed. 442; *Loudon* v. *Scott,* 58 Mont. 645 [194 Pac. 488, 12 A. L. R. 1487] ; *Perkins* v. *Trueblood,* 180 Cal. 437 [181 Pac. 642] ; *McGraw* v. *Kerr,* 23 Colo. App. 163 [128 Pac. 870, 873], these citations being cited particularly in connection with the contention that nowhere in the record is there any evidence that any act or omission of the doctor caused the streptococcic infection disclosed by the evidence. However, the contentions in this respect we deem completely answered in the cases of *Barham* v. *Widing, supra,* and *Inderbitzen* v. *Lane Hospital, supra.* A further discussion of said cases cited by respondent is not considered necessary for the purpose of this opinion.

The complaint, as stated, is in three counts, all relating to the same transaction or event, and the evidence applies to all three counts.. We are of the opinion that the evidence, together with the reasonable inferences to be drawn therefrom, presented a case for the determination of the jury. It is our conclusion that the motion for a nonsuit should have been denied upon all three counts of the complaint.

The judgment is therefore reversed, and the cause remanded for further proceedings.

Thompson, Acting P. J., and Tuttle, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 3, 1941.