[Civ. No. 3018.   Fourth Dist.   Mar. 3, 1943.]

NETTIE MASTRO, Appellant, v. DR. J. B. KENNEDY et al., Respondents.

Rae B. Carter and John D. Chinello for Appellant.

Hadsell, Sweet, Ingalls & Carroll, W. H. Stammer and Galen McKnight for Respondents.

MARKS, J.—This is an appeal from a judgment for defendants in a malpractice case, entered after a motion for nonsuit had been granted.

Defendants are duly licensed dentists who were practicing in the city of Fresno. Dr. Marquess was employed by Dr. Kennedy who was absent from his office on the occasions involved here. The services rendered plaintiff were performed by Dr. Marquess within the scope of his employment by Dr. Kennedy. We will hereafter refer to Dr. Marquess as the defendant.

It is well settled that where a motion for nonsuit is made, all evidence favorable to plaintiff's case must be accepted as true; that all reasonable inferences from the evidence must be drawn in favor of plaintiff; that it is error to grant the motion where there is any substantial evidence or reasonable inferences to be drawn from it which would support a judgment for plaintiff. For this reason we will summarize the evidence favorable to plaintiff and disregard other evidence conflicting with it. (*Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64 [77 P.2d 1059].)

Plaintiff called at the office of defendant on July 22, 1938. She was then suffering from a toothache. After examination defendant found a deep carious condition in the next to the last molar on the left side of the lower jaw. He cleaned

the cavity and put in a temporary filling. He instructed plaintiff to return in four days, or sooner if she suffered any pain.

Plaintiff returned to her home, became feverish and suffered such pain that she was confined to her bed. She was taken to defendant's office on July 25, 1938, when defendant extracted the tooth. He testified there was no infection on the tooth nor in the sockets from which it was extracted. He gave plaintiff two injections of cocaine before the extraction. One was to effect a mandible block, and the other was in the tissues adjoining the tooth. He sutured the gums and instructed plaintiff to wash her mouth with warm salt water and to apply ice packs.

Plaintiff testified that defendant did not apply iodine or any other solution to her gums before injecting the cocaine or extracting the tooth; that he did not take, nor recommend the taking of an X-ray of her teeth.

Plaintiff returned to her home and again had to go to bed. She was taken to defendant's office again on July 26th, when she received treatment. Her jaw was swollen and she was suffering much pain. She was returned to her home and put to bed. Her condition became worse and the family physician was called. He found her temperature above normal and her jaw infected. He gave her medicine and treatments which improved her condition so that she was taken to see defendant again on July 30th. Defendant advised her to consult a specialist. She was taken to the office of the specialist by Dr. Kennedy's nurse and hospitalization was advised. She remained in the hospital for fourteen days, during the first four of which she was in a semi-comatose condition. An abscess formed inside the lower jaw beneath the sockets from which the tooth had been extracted, and another under the chin. These were opened from the outside and drained. The gum was also lanced and drained.

After her discharge from the hospital plaintiff remained under the care of the family physician until the following December. In January, 1939, she was sent to the University of California Hospital in San Francisco. She was found to have chronic osteomyelitis of the left mandible. As no bed was available in the hospital she was sent home. She returned to the hospital on March 23, 1939, and an operation was

performed on March 27th. The doctor opened up the old incision under the jaw and removed bone and granular substances and also went through the gum, removed bone and curretted the sockets. Plaintiff remained in the hospital until April 6th, and was discharged from treatment on April 9th. She returned to the Hospital Clinic several times. On December 7, 1939, it was found that another abscess was forming. As no bed was vacant in the hospital she returned home and had treatment in Fresno where the abscess was drained. Her last treatment mentioned in the record was in July, 1940.

Plaintiff produced a witness, a dentist practicing in Fresno, who qualified as an expert. He testified as to the standards of the practice of dentistry prevailing in Fresno. He also testified that according to those standards defendant should have had an X-ray taken before extracting the tooth and should have applied iodine or some other disinfectant to the gums before inserting a hypodermic needle in them and extracting the tooth.

Since we must accept as true any substantial evidence tending to support a judgment for plaintiff, where a motion for nonsuit is granted, we must take the following facts as established in this case: That the standards of practice of dentistry in Fresno required that defendant have an X-ray taken, or at least to have recommended that an X-ray be taken of the aching tooth and jaw, and also that he sterilize the gums before inserting the hypodermic needle and pulling the tooth; that he did neither of these things and therefore did not employ the training, care and skill required of dentists of good standing practicing in the community. (*Patterson* v. *Marcus*, 203 Cal. 550 [265 P. 222]; *Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 P. 654]; *McLennan* v. *Holder*, 1 Cal.App.2d 305 [36 P.2d 448]; *McNamara* v. *Emmons*, 36 Cal.App.2d 199 [97 P.2d 503].) If this failure on the part of defendant was the proximate cause of the infection from which plaintiff suffered the nonsuit was erroneously granted.

We may also accept as established facts, that immediately after the extraction there was no infection on the roots of the tooth nor in the sockets; that a serious infection set in which caused plaintiff much suffering and expense over a period of two years.

The case of *Barham* v. *Widing*, 210 Cal. 206 [291 P. 173], has features quite similar to those of the instant case. There, a dentist was accused of malpractice because he failed to sterilize the hypodermic needle used in injecting an anesthetic, and to sterilize the gums before extracting a tooth. In that case the Supreme Court said:

"Under the circumstances of this case there is a remote possibility that the infection developed from some cause other than the defendant's failure to sterilize the needle or the gum into which it was inserted, but the evidence is sufficient upon which to warrant the jury in finding that it was caused by his negligence in failing to follow these reasonable precautions in spite of his testimony to the contrary. The jurors were entitled to accept the solution to which these circumstances led them in preference, even, to the positive statement of the defendant and his nurse to the contrary. After the verdict of a jury has been fairly rendered, all the circumstances of the case, together with every reasonable inference which may be drawn therefrom, will be marshaled in support of the judgment. Because of the very subtleness of the origin and development of disease, less certainty is required in proof thereof. As the court says in the case of *Dimock* v. *Miller*, 202 Cal. 668, 671 [262 P. 311, 312]:

" 'If . . . it is necessary to demonstrate conclusively and beyond the possibility of a doubt that the negligence resulted in the injury, it would never be possible to recover in a case of negligence in the practice of a profession which is not an exact science.'

"It is not necessary in the trial of civil cases that the circumstances shall establish the negligence of the defendant as the proximate cause of injury with such absolute certainty as to exclude every other conclusion. It is sufficient if there is substantial evidence upon which to reasonably support the judgment. (*Ley* v. *Bishopp*, 88 Cal.App. 313, 316 [263 P. 369].) . . .

"It was not necessary for any dentist or physician to state that the conduct of the defendant was negligent or in conflict with the usual established practice of the profession in that vicinity to administer a local anesthetic for the purpose of extracting a tooth without sterilizing the needle, or the flesh into which it is inserted. The court will take judicial

knowledge of the necessity to use ordinary care to procure sterilization under such circumstances.'' (See, also, *Inderbitzen* v. *Lane Hospital,* 124 Cal.App. 462 [12 P.2d 744, 13 P.2d 905]; *Anderson* v. *Stump,* 42 Cal.App.2d 761 [109 P. 2d 1027]; *Pierce* v. *Paterson,* 50 Cal.App.2d 486 [123 P.2d 544].)

Defendants seek to distinguish the instant case from the Barham case, because there, the infection started from the exact spot of the injection, while in this case it was in the general locality but not necessarily in the exact spot of the injections. This distinction is too tenuous to be sound. Here, the infection was in the region where the needle pierced the unsterilized gums, and the reasonable inference might follow, if drawn by the jury, that a germ on the unsterile gums was carried into the tissue on the needle and caused the infection. The result of an unsterile condition is a matter of common knowledge under the cases already cited.

Defendants argue that, assuming the failure to conform to the standards of good practice of dentistry in Fresno, still there is nothing to establish this lack of care as the proximate cause of. the infection. The same argument was made and rejected in *Barham* v. *Widing,. supra.*

A like argument was advanced by the defendant in *Dimock* v. *Miller,* 202 Cal. 668 [262 P. 311], where a dentist .was accused of malpractice in failing to sterilize his needle before giving a hypodermic injection and in using impure water in the solution injected. It was held that a plaintiff was not required to exclude all factors, other than those mentioned, as causes of the infection.

■ Where the results of negligence on the part of a physician or dentist are peculiarly within the knowledge of experts, the testimony of those experts is a necessary element of a plaintiff's case. ■ The danger of infection from an unsterile instrument, or a dirty field of operation, is a matter of such common knowledge that a jury is authorized to draw the reasonable inference that an infection was caused by negligence where an unsterile instrument is used, or the operative field is not properly sterilized. (*Ales* v. *Ryan,* 8 Cal.2d 82 [64 P.2d 409]; *Engelking* v. *Carlson,* 13 Cal.2d 216 [88 P.2d 695]; *Barham* v. *Widing, supra; Nicholas* v. *Jacobson,* 113 Cal.App. 382 [298 P. 505].)

In *Roberts* v. *Parker*, 121 Cal.App. 264 [8 P.2d 908], a dentist was sued for malpractice where osteomyelitis of the jaw bone set in after an operation where no X-ray had been taken to determine the condition of the field of operation. Experts testified that under the standards of good practice prevailing in the community an X-ray should have been taken before the tooth was extracted. There was evidence introduced on behalf of the defendant tending to prove that the disease had its source other than in the extraction of a tooth. It was argued that there was nothing to show that the failure to use due care on the part of. the dentist was the proximate cause of the osteomyelitis. In disposing of this argument the court said:

"Therefore, if in spite of the testimony tending to show a different origin of the disease there be testimony to sustain the opposite conclusion which has been reached by the jury, its verdict must be sustained. In other words after the verdict of the jury has been fairly rendered, all the circumstances of the case, together with any reasonable inference which may be drawn therefrom, will be marshaled in support of the judgment. (*Barham* v. *Widing, supra*.) Measured by the foregoing rules the circumstances of the present case are legally sufficient to sustain the jury's verdict. (*Dimock* v. *Miller, supra; Barham* v. *Widing, supra; Ley* v. *Bishopp, supra*.)" A like rule must be invoked when the trial court grants a motion for nonsuit.

We have reached the conclusion that there is some substantial evidence in the record, and reasonable inferences to be drawn from such evidence, pointing to the lack of due care on the part of defendant being the proximate cause of the disease suffered by plaintiff. It follows that questions of fact were presented for decision by the jury and that the motion for nonsuit was improperly granted.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied April 1, 1943, and respondents' petition for a hearing by the Supreme Court was denied April 29, 1943.