KATHLEEN MCDERMOTT, Appellant, *v.* MANHATTAN EYE, EAR & THROAT HOSPITAL et al., Respondents.

First Department, May 15, 1962.

*Max Toberoff* of counsel (*Sidney Schwamm,* attorney), for appellant.

*George S. Pickwick* of counsel (*George J. Conway,* attorney), for Manhattan Eye, Ear & Throat Hospital and another, respondents.

*John J. Cullen* of counsel (*Mendes & Mount,* attorneys), for Richard T. Paton, respondent.

*Richard E. Shandell* of counsel (*Desmond T. Barry* with him on the brief; *Barry, Treanor, Shandell & Brophy,* attorneys), for Walter S. Schachat, respondent.

*Donald J. Fager* of counsel (*Martin, Clearwater & Bell,* attorneys), for Daniel Doctor, respondent.

McNALLY, J. In an action for malpractice plaintiff appeals from a judgment dismissing the complaint as to all defendants at the close of plaintiff's case.

Plaintiff relies on two theories: (1) some of the defendants knowingly made false representations of fact intending to induce plaintiff to submit to surgery to her injury and damage; and (2) some of the defendants recommended and performed the surgery when it was conclusively contraindicated by the condition of plaintiff's left eye.

The facts are as follows: On August 26, 1949, plaintiff, age 44, first appeared at the eye clinic of defendant hospital. She furnished a history of poor vision since childhood. Defendant Dr. Schachat, an ophthalmologist, examined the plaintiff; he found lesions in both eyes and referred her to the corneal clinic for opinion. Plaintiff had been aware for many years that she had corneal disease in both eyes and had seen many physicians with reference to this condition; she also knew about and had previously received medical advice with regard to a corneal transplant. Plaintiff's testimony is she had the following conversation with Dr. Schachat:

"Q. Will you tell us what that conversation was? A. Yes. After Dr. Schachat examined my eyes, he said that he may be able to improve my vision by performing an operation for a corneal transplant. I asked Dr. Schachat ' Would this mean taking a gamble with my sight?'

"And he said that they didn't take chances in this hospital.

"I asked Dr. Schachat, ' Assuming that this operation was a complete failure, what condition would my left eye be in?'

"He said that ' Exactly the way it is now.'

"' You mean, if there is any possibility, Doctor, that I would lose a fraction, I would never want to go through with it because I'm self-supporting and I can earn my living independent with what I have and have done all my life, and that I wasn't prepared to take a gamble.'

"He told me that I only had everything to gain and positively nothing to lose."

Plaintiff was informed by Dr. Schachat that he did not specialize in corneal transplants; he referred her to defendant Dr. Paton. Thereafter plaintiff appeared at the corneal clinic at defendant hospital on several other occasions prior to surgery. On one of those occasions, according to plaintiff, the defendant Dr. Kleinhandler assured the plaintiff: "If the operation wasn't a success, I would be just the way I was with my eye and vision and go about my business."

Plaintiff's brief concedes the alleged misrepresentations 'do not support an action for fraud and argues they support an action for malpractice. Assuming the statements relate to facts, and are not opinions and are actionable (see Restatement, Torts, § 311), on this record it appears the plaintiff did not rely thereon. The tenor of plaintiff's testimony is that she had the utmost faith in defendant Dr. Paton. Prior to the surgery Dr. Paton's prognosis was: "You're going to lose your sight." A more dismal outlook is inconceivable. Plaintiff's submission to surgery thereafter precludes any claim of reliance upon the

alleged representations of defendants Dr. Schachat and Dr. Kleinhandler.

Defendant Dr. Doctor did not participate in the decision to undertake the operative procedures and there is no claim that he made any representation to plaintiff. Three operations were performed on plaintiff's left eye. Dr. Doctor's only connection with the case is that he supervised defendant Dr. Kleinhandler in the second operation which embraced the corneal transplant. There is no testimony in the record nor is it claimed that the surgical procedures were in any respect negligent.

In the light of the foregoing the dismissal as to defendants Dr. Schachat and Dr. Doctor was proper and should be affirmed.

With reference to the remaining defendants, the crux of plaintiff's claim is that the surgery was contraindicated. Plaintiff's condition was diagnosed as Fuch's dystrophy, a disease of the cornea which impairs vision. The cornea is a thin, transparent membrane which lies over the colored portion of the eye. The transplant in this case involved the excision of the central portion of plaintiff's cornea and its replacement with an identical piece cut from the cornea of a donor's eyeball.

Prior to 1952 no corneal transplant had ever been successfully performed on a patient with Fuch's dystrophy. Since then there have been a limited number of successful operations. Plaintiff's theory is that a corneal transplant is never indicated when the disease extends to the periphery of the cornea. Involvement of the periphery, argues the plaintiff, precludes a good result because the disease in the corneal periphery will invade the graft.

Plaintiff contends further that another prerequisite of a corneal transplant on a patient suffering from Fuch's dystrophy is that the patient's eyesight be not less than 20/200. Plaintiff's vision was considerably less than 20/200.

Plaintiff called Dr. Paton and Dr. Kleinhandler as witnesses. Plaintiff did not call an expert witness nor did she offer any other medical proof to establish her allegations of malpractice.

The first operative procedure was a curettement of the endothelium by Dr. Kleinhandler with Dr. Paton in attendance, which had for its purpose the scraping of an underlying layer of diseased tissue. The second operation, the corneal transplant, was performed by Dr. Kleinhandler with Dr. Doctor supervising. The third operation was performed by Dr. Paton for a secondary glaucoma. The ultimate result of the surgical procedures is a bulging opaque corneal transplant with the iris completely adherent to the posterior surface of the cornea and perception limited to light and shadows.

Plaintiff attempted to prove a case in malpractice by calling defendant Dr. Paton and eliciting opinion evidence. In substance, no opposition was raised to questions concerning his examination, treatment or diagnosis (and the record shows that all such questions in the main were answered) but objections were made and sustained as to questions calling for expert opinion. Plaintiff contends that said testimony was improperly excluded.

In a case such as this the opinion must be based on facts previously stated by the witness or testified to by others or agreed upon or assumed to be true. (*Clark* v. *Iceland S. S. Co.,* 6 A D 2d 544, 547.) Questions calling for expert opinion based in part upon facts not contained in the record are improper though the facts are personally known to the doctor. Many of the questions to which objections were sustained fall in this category.

We conclude that the rulings of the learned trial court in the main were correct. An expert subpœnaed as a witness has a right to refuse to give his opinion or to answer any question connected with his experience and judgment as an expert. (*People ex rel. Kraushaar Bros. & Co.* v. *Thorpe,* 296 N. Y. 223; *Mount* v. *Welsh,* 118 Ore. 568, 585.) A professional witness is obligated to testify to facts within his knowledge, the same as any other witness. However, he may not be required to state his opinion. (*People ex rel. Deuel* v. *Shaw,* 259 App. Div. 977, motion for leave to appeal denied 284 N. Y. 821; see Ann. 77 A. L. R. 2d 1186.)

In some jurisdictions a defendant doctor called by the plaintiff may be used as a medical expert. In other jurisdictions a plaintiff so doing is limited to eliciting facts and the doctor may not be required to give an expert opinion. (See 98 C. J. S., Witnesses, § 367.) Jones on Evidence (vol. 4 [5th ed.], § 927) states that the adverse party may not be subjected to an examination as an expert witness, citing *Hunder* v. *Rindlaub* (61 N. D. 389), a case characterized as unsound in Wigmore on Evidence (3d ed., vol. 3, § 916), but cited with approval in 5 So. Cal. L. Rev. 448.

In at least four jurisdictions controlled by adverse witness statutes, an adverse party may be called and examined as if he were under cross-examination but may not be required to express an opinion. (*Forthofer* v. *Arnold,* 60 Ohio App. 436; *Osborn* v. *Carey,* 24 Idaho 158; *Hull* v. *Plume,* 131 N. J. L. 511; *Hunder* v. *Rindlaub, supra.*) The Ohio, Idaho and New Jersey statutes provide that at the instance of the adverse party a

party may be examined as if under cross-examination, like any other witness.

*State* v. *Brainin* (224 Md. 156) is to the contrary. In that case the Court of Appeals of Maryland held that a party calling an adverse party as a witness may subject him to examination as an expert. The statute in Maryland omits any reference to cross-examination and uses instead the terms interrogate, contradict and impeach. We have no such statute in New York.

A holding to the same effect is *Lawless* v. *Calaway* (24 Cal. 2d 81) where the Supreme Court of California held that under the terms of the California statute, which is similar to the Ohio, Idaho and New Jersey statutes, a party could be examined to the extent of the knowledge he possessed and that such examination should be permitted even though it calls for expert testimony. (To the same effect see *Lashley* v. *Koerber,* 26 Cal. 2d 83; *Dean* v. *Dyer,* 64 Cal. App. 2d 646; *Anderson* v. *Stump,* 42 Cal. App. 2d 761.) *

The New York rule is that a witness may not be compelled to give expert testimony. (*People ex rel. Kraushaar Bros. & Co.* v. *Thorpe,* 296 N. Y. 223, *supra.*) An additional reason against the compulsory expert testimony of an adverse party such as defendant Dr. Paton is that by the commencement of this action the plaintiff's position is to the effect that said defendant did not conduct himself in accordance with accepted medical practice. In requiring the expertise of defendant Dr. Paton relating to usual and customary medical procedures concerning the standard by which the jury is to judge the conduct of the defendants, the plaintiff invites the jury to be guided by a standard furnished by a source condemned by her.

Accordingly, we conclude that the dismissal of the case against all the defendants was proper. However, in view of plaintiff's mistaken reliance upon the expertise of defendant Dr. Paton, and the possibility that plaintiff may be able to supply the necessary expert medical evidence, the dismissal as to defendants Dr. Paton and Dr. Kleinhandler and the defendant hospital should be modified, in the exercise of discretion, to the extent that the dismissal is without prejudice (Civ. Prac. Act, §§ 23, 482), and the judgment as so modified should be affirmed, without costs.

---

* (As to pretrial procedure in the Federal court, see, also, Fed. Rules Civ. Pro., rule 26, subds. [b], [c], rule 43, subd. [b]; *Russo* v. *Merck & Co.,* 21 F. R. D. 237; *Broadway & Ninety-Sixth St. Realty Co.* v. *Loews, Inc.,* 21 F. R. D. 347; *Moran* v. *Pittsburgh-DesMoines Steel Co.,* 6 F. R. D. 594; a contrary holding is *Lewis* v. *United Air Lines Transp. Corp.,* 32 F. Supp. 21.)

380

STEVENS, EAGER and STEUER, JJ., concur; RABIN, J. P., concurs in result.

Judgment unanimously modified, in the exercise of discretion, to the extent that the dismissal as to the defendants, Dr. Paton, Dr. Kleinhandler and defendant hospital is without prejudice (Civ. Prac. Act, §§ 23, 482).