[L. A. No. 11818. In Bank.—June 30, 1932.]

ALVA E. EBRITE, Respondent, v. RAY CRAWFORD et al., Defendants; LLOYD O'DONNELL, Appellant.

Kelby & Lawson for Appellant.

Todd, Pawson & Watkins for Respondent.

Haight & Trippet, Oscar A. Trippet, Walter L. Bruington, W. Jefferson Davis and O'Melveny, Tuller & Myers, as *Amici Curiae*.

THE COURT.—This is a companion case to the case of *Smith* v. *O'Donnell*, (L. A. No. 11817) *ante*, p. 714 [12 Pac. (2d) 933], this day decided. While the same questions are not involved here as arose in the Smith case, the two actions grew out of the same collision of two airplanes and are predicated upon the same state of facts. They were tried together and were decided at the same time by the District Court of Appeal. Due to the fact that the two actions were so closely related, we ordered, upon the petition of the appellants, a transfer of the present action at the same time we granted a hearing herein of the Smith case. The principal argument, since these two actions have been before this court, has been directed to the Smith case. In our opinion nothing particularly new has been presented to this court by counsel respecting any question involved in the instant action that was not before the District Court of Appeal. We are satisfied with the opinion and decision of that court in this case, and we approve and adopt the same as the opinion of this court. As in the Smith case, the opinion in this case was written by Mr. Justice Thompson and concurred in by his associates. It is as follows:

"The defendant Lloyd O'Donnell during February, 1928, and for some time prior thereto, was engaged in the business of carrying passengers for hire in aeroplanes and of giving flying lessons to students, and to that end maintained his place of business at the Long Beach Municipal Airport. Ray Crawford was an employee of O'Donnell's and at the time of the collision which gave rise to this litigation was acting within the scope of his employment. The respondent Ebrite was engaged in a like enterprise. The Long Beach Municipal Airport is approximately 2900 feet wide from north to south, and for a distance of about 2200 feet from the west to east, and at this point narrows to about 200 feet and continues on easterly 4500 feet or thereabouts. Intersecting the narrow portion of the field at a point about 2770 feet easterly of the wide part is a ditch or drainage canal. This stretch of the field, i. e., the plot

2700 by 200 and lying easterly of what we may call the main airport and westerly of the ditch was used by pilots for the purpose of giving landing lessons to students. Just previous to the collision Ebrite and a student had taken off from the main field, risen to an altitude of about 900 feet and after turning had descended to that portion of the field already indicated until the landing wheels touched the ground, whereupon the motor had been opened up and they had risen to repeat the operation. Thrice they had landed. On the fourth occasion, according to the testimony of Ebrite, he came down to an altitude of about 50 feet, where he leveled off and flew directly westward for the purpose of making his final landing on the main field, and while so flying the airplane driven by Crawford descended upon and collided with his plane. Crawford testified that he was coming on to the field and that at an elevation of about 1500 feet he saw Ebrite on the ground just westerly of the ditch; that at 900 feet he made observations to see if any planes were in his way; that the next he saw was Ebrite's ship crashing through his own right wing in an upward direction. Both planes fell on the narrow runway at a distance of from 700 to 800 feet easterly of the main field. The jury returned a verdict in favor of the plaintiff to compensate him for the damage to his airplane and the injuries sustained personally. This is an appeal by the defendant O'Donnell from the judgment entered on the verdict.

"The first reason assigned for a reversal of the judgment is that the court misinstructed the jury as follows:

" 'The court instructs you that if you believe from the evidence that immediately before the collision, the defendant Ray Crawford was at a greater height than the plaintiff Ebrite and that he was behind the Ebrite plane and that the plaintiff Ebrite was not taking off but was preparing to land, then you shall return a verdict for the plaintiff Ebrite and against the defendants· Crawford and O'Donnell.'

"Appellant attacks this instruction in two particulars. He says that the conditions mentioned therein constitute no 'evidence of negligence' and also that it omits facts in controversy material to the defense and entirely ignores the question of contributory negligence, which defense was

pleaded. The respondent, however, justifies the instruction as being the substance of sections 10i and 10m of an ordinance of the city of Long Beach, which was introduced in evidence. Those sections of the ordinance read as follows (sec. 10i) : 'Anything in this ordinance to the contrary notwithstanding, an aircraft in the act of landing shall always have the right of way.' (Sec. 10m) : 'In the case of aircraft approaching aerodromes or sea harbors for the purpose of landing, the aircraft flying at the greater height shall be responsible for avoiding the aircraft at a lower level and as regards landing shall observe the rules for an overtaking aircraft for passing.' The section which gives the rules for overtaking craft is involved in another of the instructions, but we give it here to fully explain the one now under consideration. It reads 'Any motor driven aircraft overtaking any other aircraft shall so alter its course as to pass to the right of such overtaken aircraft and must not pass by diving. Every aircraft coming up with another aircraft from any direction more than one hundred ten (110) degrees from ahead of the latter or in such a position with reference to the aircraft which it is overtaking that at night it would be unable to see either of that aircraft's side lights, shall be deemed to be an overtaking aircraft and no subsequent alteration of the bearing between the two aircrafts shall make the overtaking aircraft a crossing aircraft within the meaning of these rules, or relieve it of the duty of keeping clear of the overtaken aircraft until it is finally passed and clear.'

■ "The appellant replies to this contention that the accident occurred outside the city limits of Long Beach, the easterly city limits being westerly of the point on the narrow portion of the field above which the machines collided. This argument of appellant cannot be sustained for the reason that the city of Long Beach had extraterritorial power necessary to regulate and lay down rules governing the use of the municipally-owned airport, lying partly within and partly without the city. By act of the legislature approved April 28, 1927 (Stats. 1927, p. 485), California municipalities were authorized and empowered to purchase, lease or otherwise acquire lands for and to operate airports or flying fields and in connection therewith 'to provide rules and regulations covering the use of such airport and facili-

ties and the use of other property or means of transportation within or over the said airport'. In addition to the implication which necessarily flows from the quoted language of the statute it should be observed as is said by the Supreme Court in *In re Blois,* 179 Cal. 291, 296 [176 Pac. 449, 451] : ' . . . Municipalities may exercise certain extraterritorial powers when the possession and exercise of such powers are essential to the proper conduct of the affairs of the municipality.' And it requires no great meditation to realize how strange an anomaly it would be to say that the city might own an airport adjoining its boundaries and yet be without the power to regulate the manner of its use. For other statements of the right of the city to exercise extraterritorial jurisdiction when necessary to the proper conduct of its affairs see *Mulville* v. *City of San Diego,* 183 Cal. 734 [192 Pac. 702] ; 18 Cal. Jur. 803; and Case Note to *Brown* v. *Cle Elum,* 55 A. L. R., pp. 1175–1186.

██ ''However, the instruction was erroneous. It ignores the possibility of negligence on the part of Ebrite, and in effect says that proof that Crawford was above and behind the plane of Ebrite at a time when the latter was preparing to land, coupled with proof of the collision is conclusive upon the question of negligence. The respondent in effect recognizes the error when he says: 'It is a well-known principle in the law of negligence that infraction of a penal law or ordinance is *prima facie evidence of negligence.'* We may assume in accordance with the intent of the ordinance that the lower landing plane had the right of way and that it was the duty of the higher rear plane to pass to the right of and avoid the lower ship and yet we can conceive the happening of many things not mentioned in the instruction which might as matters of fact relieve the latter of liability, as, for example, the very thing which the defendant claimed herein, to-wit: That plaintiff was apparently preparing to land, suddenly changed his mind and 'zoomed' into the air and into the defendant's ship, without possibility of avoidance on the part of the defendant's plane. ██ 'It is a well-known rule of law that a ''formula'' instruction must contain all the elements essential to a recovery, and the absence of any one of such elements may not be compensated for nor cured by a reference thereto in other instructions correctly and fully stating the

law.' (*Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237], and a long list of authorities there cited.) We cannot agree with respondent that the words 'preparing to land' saves the instruction. It would be more debatable had the phrase read: 'was in the act of landing', which is the language of the ordinance, but 'preparing to land' leaves too broad a field wherein to wander. It might easily be reasoned that he was preparing to land from the time he started his descent even though he changed his course and attempted temporarily to take to higher levels. It is a well-known fact that airplanes do not always land on the first attempt; that the pilot may judge the conditions therefor, when near the earth, to be unfavorable, in which event he immediately increases the speed of his propeller and ascends for the purpose of again making an attempt to land safely. Whether he should be deemed negligent in such maneuvers would depend largely upon the surrounding conditions. That he could give every appearance of landing; lull the pilot of a higher plane into a false sense of security and then without warning project himself into the exact line of flight of the other plane, and his act, in so doing, not be called into question is a conclusion we very much doubt. ■ Whether there was negligence in this particular or whether the defendants were guilty of negligence in relying upon appearances, bearing in mind the duty of the overtaking plane to avoid a collision, and also remembering that, unlike other vehicles of transportation, airplanes, so long as they are in midair, must keep traveling, are questions which should have been left to the jury under appropriate instructions.

■ "The appellant next complains because the court refused to give an instruction requested by him as follows:

" 'If you find from the evidence that at the time of the last circle of the field by the plaintiff, Ebrite, that he touched the ground with the landing gear of his plane for the purpose of making a student landing, or if you further find that he was piloting his plane in such a manner and under such circumstances that his conduct in that respect would lead the defendant, Crawford, to believe that he was making, or attempting to make, a student landing, then, in either of those events, if you find that either of

them did so, of course your verdict will be for both of the defendants.'

"For similar reasons the court very properly rejected the proffered instruction. It seems obvious from what we have already said that had the instruction been given it would have restricted the jury to an altogether too narrow field of deliberation. In addition, contributory negligence was defined to the jury and the jury properly instructed with respect thereto.

 "The court instructed the jury upon the doctrine of the last clear chance and the appellant says that in so doing it committed error because the evidence failed to furnish a basis for its application. There is testimony which is sufficient to have warranted a finding by the jury that prior to the collision the plaintiff was guilty of negligence and by reason thereof had placed himself in a position of great danger from which, the jury was justified in believing, he could not extricate himself by the use of ordinary care, because he was oblivious thereto, but we have failed to find any evidence that the appellant knew of this perilous situation. There is evidence which, if believed, would justify the conclusion that by the exercise of ordinary care the appellant should have known of the situation and been able to avoid the collision by the use of ordinary care. The question then is this: Can negligence in failing to discover the dangerous situation of the plaintiff be substituted for actual knowledge as one of the prerequisites for the application of the doctrine of the last clear chance? We think this would be extending the doctrine beyond the proper orbit. Such is the effect of the discussion and decision of our Supreme Court in the case of *Starck* v. *Pacific Elec. Ry. Co.*, 172 Cal. 277 [L. R. A. 1916E, 58, 156 Pac. 51]. Reference may also be had to the long list of authorities cited therein.

 "The court also instructed the jury in the words of section 10m of the ordinance which we have already quoted. As we read the first part of the instruction it means that it is the duty of a plane on a higher level to avoid a collision with an aircraft at a lower level. This becomes increasingly manifest when read in connection with the other instructions. We cannot believe that the jury

when considering other rules for measuring the liability of the appellant could have understood that the higher plane undertook to guarantee against all contingencies that a collision would not take place. Probably it would have been better had the court actually defined the duty of the plane at the higher level, but no damage was actually done. However, the last part of the instruction, to-wit: 'and as regards landing shall observe the rules for an overtaking aircraft for passing' is so inextricably interwoven with the next instruction of which complaint is made that it must rest or fall therewith. We have also quoted it above. The first sentence, i. e., 'any motor driven aircraft overtaking any other aircraft shall so alter its course as to pass to the right of such overtaken aircraft and must not pass by diving', is readily understood except that we have no definitive statement of what constitutes an overtaking craft. We venture the assertion, however, that 99 out of 100 ordinarily intelligent persons, not versed in the science of engineering, would not be able to understand without assistance the next sentence—the definition. It reads: 'Every aircraft coming up with another aircraft from any direction more than one hundred ten (110) degrees from ahead of the latter or in such a position with reference to the aircraft which it is overtaking that at night it would be unable to see either of that aircraft's sidelights, shall be deemed an overtaking plane. . . . ' The confusion first arises from the words 'coming up with another'. Does it mean arising with another or does it mean overtaking another? From the sole fact that the section of the ordinance is discussing overtaking planes we determine that it means the latter, but the loose construction of the definition is at once apparent. But worse still is: 'one hundred ten (110) degrees from ahead of the latter'. Had the ordinance or the instruction made use of the language employed in subsection F of section 74 of the air traffic rules (Hotchkiss, Aviation Law, p. 251) it would have been understood. That section reads: 'An overtaking aircraft is one approaching another directly from behind or within 70° of that position, . . . ' But in the section of the ordinance made use of in the instruction, to employ a homely but apt expression, the fathers of the language literally 'put the cart before

the horse' or they went around in front to get behind. And in so doing the section of the ordinance was rendered unintelligible to the ordinary man. In fact the writer of this opinion in order to comprehend its meaning submitted the language to his associates, who were as much confused as he, and it was finally necessary to seek the services of an engineer before he clearly understood the language. Enough has been said to demonstrate that the judge of the trial court should not have submitted the section to the jury as constituting an explanation of a rule of law. In 24 California Jurisprudence, page 817, we read: 'Instructions should be clear and concise, complete, intelligible, unambiguous and certain; and this ordinarily requires that they be couched in plain and simple language which is readily comprehended by the jury.' We are not, however, attempting to pass upon its validity as an ordinance, but we do most positively assert that as an instruction it failed to comply with the quoted requirements for an instruction.

"Complaint is also made of an instruction which is another portion of the ordinance reading as follows: 'The court instructs you that it is unlawful for any person, firm or corporation, whether as principal, agent, servant, employee or otherwise, to knowingly and wilfully operate any aircraft within the city of Long Beach without due caution and circumspection or in such manner as to endanger the life, limb or property of any person.' We are at a loss to understand what purpose the instruction was intended to serve. The respondent attempts to justify it upon the theory that the violation of a penal ordinance 'is *prima facie* evidence of negligence.' But the negligent operation of the aircraft is made the unlawful act by the section given as an instruction. We fear that respondent, like the industrious squirrel, is merely lost in the revolutions of his cage. Not being in response to any issue before the jury the instruction should not have been given (*Ensign* v. *Southern Pac. Co.*, 193 Cal. 311 [223 Pac. 953]). However, we doubt, if that were the only error, it would be sufficient to warrant a reversal of the judgment.

"The other instructions complained of apply especially to the case of *Smith* v. *O'Donnell, ante,* p. 714 [12 Pac. (2d) 933], a companion action which was tried with the

present case and the appeal in which is this day determined. No other points require discussion.''

The judgment is reversed.

Rehearing denied.