[Civ. No. 12358. First Dist., Div. One. Nov. 24, 1943.]

ELIZABETH C. DAWSON, Appellant, v. WILLIAM BERT BOYD, Defendant; M. J. KRUG et al., Respondents.

ELIZABETH C. DAWSON, as Administratrix, etc., Appellant, v. WILLIAM BERT BOYD, Defendant; M. J. KRUG et al., Respondents.

Jaffa & Sumski for Appellant.

Bronson, Bronson & McKinnon for Respondent.

PETERS, P. J.—At about 7:30 p. m. on December 30, 1940, an automobile driven by James B. Dawson, and in which his wife, the plaintiff Elizabeth C. Dawson, was riding, collided with a truck-trailer, in which the owner, the defendant M. J. Krug, was riding, and which was being driven by defendant William Bert Boyd, on the Bayshore Highway just south of Redwood City. As a result of the accident, James B. Dawson died, and Elizabeth C. Dawson received serious personal injuries. Thereafter, Elizabeth C. Dawson instituted two actions against defendants, one to recover for damages for her personal injuries, and the other, as administratrix of her husband's estate, to recover damages for his wrongful death. The cases were consolidated, and were tried before a jury. The jury brought in verdicts for the defendants. From the judgments based thereon plaintiff prosecutes these appeals. Her main contention is that, as a matter of law, the evidence demonstrates that the accident occurred as a result of the negligence of defendants, and that her husband was free from contributory negligence. She urges that the judgments should not only be reversed, but that the trial court should be directed to enter judgments in her favor, and the causes remanded for a retrial on the issue of damages alone.

The problems presented are primarily factual. ■ The rules applicable to such an appeal were stated as follows in *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] : ''In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deduc-

tions for those of the trial court.'' (See, also, *Bellon* v. *Silver Gate Theatres, Inc.,* 4 Cal.2d 1 [47 P.2d 462]; *Raggio* v. *Mallory,* 10 Cal.2d 723 [76 P.2d 660]; *Juchert* v. *California Water Service Co.,* 16 Cal.2d 500 [106 P.2d 886]; *Dickinson* v. *Pacific Greyhound Lines,* 55 Cal.App.2d 824 [131 P.2d 401].) Stated another way, it is incumbent upon the appellate court to accept all evidence and the reasonable inferences therefrom which tend to support the implied findings of the jury, to consider the evidence in its most favorable aspect toward the prevailing party, and to resolve all material conflicts in favor of respondent. (*De la Motte* v. *Rucker,* 55 Cal.App.2d 226 [130 P.2d 444].) As was said in *Albaugh* v. *Mt. Shasta Power Corp.,* 9 Cal.2d 751, at p. 773 [73 P.2d 217]: ''Of course, the jury is the sole judge of the effect, sufficiency, and weight of the evidence, and the sole judge of the credibility of the witnesses. Whatever our opinion may be as to the weight of the evidence, if there is material, credible evidence to support the verdicts, this court is without power to disturb them.''

Plaintiff, while recognizing the existence of these rules actually disregards them. By disregarding conflicting evidence and the reasonable inferences therefrom she makes a quite convincing showing that the accident must have happened as a result of the negligence of defendants and without contributory negligence on the part of her husband. To reach this conclusion, however, plaintiff finds it necessary to resort to the arguments that all evidence conflicting with that given by her witnesses was ''inherently improbable,'' and was ''irrefutably'' contradicted by the physical facts. There is evidence, ample evidence, perhaps a preponderance of the evidence, to support plaintiff's theory of the case. But there is also evidence, substantial evidence, to support the implied findings of the jury. Under such circumstances, this court has no power to upset the verdicts.

The accident happened after dark on a four-lane highway that is practically straight for some distance both north and south of the place where the accident occurred. There were no eyewitnesses to the actual collision. Plaintiff was admittedly asleep at the time of the accident, as was defendant Krug, who was riding in the cab of the truck-trailer operated by his employee Boyd. The car, driven by Dawson, and the truck-trailer were both proceeding southerly on the highway. The Dawson car collided with the rear or left

side of the trailer. Admittedly, six clearance lights, two red reflector tail lights, and the headlights were properly lit on the truck-trailer. The major contention of plaintiff is that, although Krug and Boyd testified to the contrary, the physical facts demonstrate, to a certainty, that at the time of the collision Boyd was making a U turn in violation of law (§ 604, Veh. Code), and that this negligence was the sole proximate cause of the accident.

The truck-trailer was approximately fifty feet long, and had an aggregate of twenty-two wheels, twelve on the trailer and ten on the truck. The trailer had three axles towards the rear, on the end of each of which were dual wheels. The front portion of the trailer rested on the truck. The truck and trailer weighed empty (as they were at the time of the accident) about 19,000 pounds. The Dawson car was a Studebaker sedan. The accident happened on the Bayshore Highway (which runs generally north and south) about midway between Main and Chestnut Streets, in Redwood City, which streets cut into the highway from the west. The two streets are about a half a mile apart, Chestnut Street being the most southerly of the two. Just about opposite where Chestnut Street comes into the Bayshore Highway from the west, a road cuts off on the east side of the highway on a southeast angle which leads to a cement plant, where Boyd and Krug expected to pick up a load. Just north of this cement company road a railroad track crosses the Bayshore Highway, the railroad roughly paralleling the cement plant road and Chestnut Street.

The paved portion of the Bayshore Highway, at the scene of the accident, is divided into four marked lanes, each about ten feet wide, two for northerly traffic and two for southerly. Double solid white lines run down the center of the highway. Bordering the highway on each side are nine-foot asphalt shoulders, and bordering that, dirt, gravel and grass. At the northwest corner of the junction of Main Street and the Bayshore Highway is a Standard Oil Company service station.

Boyd, who was in the armed services and was not available at the time of trial, testified by means of deposition. He testified that he was driving the truck-trailer; that Krug was riding with him, but was asleep or dozing at the time of the accident; that he had left Oakland earlier in the evening intending to go to the cement plant to pick up a load;

that he did not know the exact location of the cement plant, but knew the general locality; that he proceeded over the San Mateo-Oakland bridge and turned south on the Bayshore Highway; that he drove beyond the road that leads to the cement plant and made a U turn, missed the road again, and drove northerly to the Standard Oil Company service station at Main Street; that here he made another U turn so that he was headed south; that he inquired of the attendant the way to the cement plant, and was given directions. Krug testified that the attendant told them that the road cut off to the east about half a mile south just after crossing the railroad tracks. Boyd testified that after leaving the service station he was in the outside southbound lane; that shortly before the accident he moved over to the inside southbound lane, preparatory to making a left turn; that he had straightened out in the inside lane and was proceeding straight down the highway at about twenty-five or thirty miles per hour when the accident happened; that his six clearance lights, two tail lights and headlights were lit; that the first thing he knew of the accident was the impact on the back end of the trailer; that the force of the impact threw the trailer forward and "jackknifed" the truck so that, after the accident, the trailer was facing south, in the inner southbound lane about parallel to the double white lines, while the truck was about at right angles facing east and partially in the inner northbound lane; that after the accident the Dawson car was behind the truck but not in contact with it; that because of the awkward position of the truck-trailer they immediately moved it off the highway and, for convenience, drove it to the east side of the highway facing north; that he saw scratches and dents on the rear of the trailer, and that the inside right rear dual tire was cut; that he told several police officers, who arrived shortly after the accident, the facts as he knew them; that, among other things, he told the police officers that the Dawson car hit the trailer from behind; that after the police officers came, they drove to the police station in Redwood City and then drove to the cement plant and changed the cut tire and loaded the trailer.

Krug corroborated Boyd as to most of the material facts above set forth. He also testified that after leaving the gas station he was dozing; that the force of the accident threw him straight back against the cab; that after the accident

he "jackknifed" the equipment and got it off the highway facing north because that was the easiest thing to do; that in performing this operation he drove the truck-trailer forward and then backward and then forward, heading it north; that he explained to the officers what had happened; that he told the officers that the trailer was struck from the rear; that he explained to the officers why the equipment was facing north and that they had agreed that he had got the equipment off the highway the fastest way; that he knew they were hit from the rear because he was thrown against the back of the cab; that after the accident the right rear radius rod which holds the axle was broken; that the radius rod was of steel and was one inch thick, two inches wide and thirty-six inches long, and located in the rear of the trailer; that he noticed it freshly broken right after the accident; that the impact knocked both tail gates off the trailer, these being attached by hinges; that the right inside rear tire had a hole through it; that one of the rear tail lights had its glass broken, although it was still burning; that the bed of the trailer was about thirty-eight inches off the ground; that he knew that the truck was in high gear at the time of the accident because otherwise the noise of the transmission would have awakened him; that he did not tell the officers that the truck-trailer was making a U turn at the time of the accident; that after the accident the Dawson car was headed south at a slight southeast angle; that the left front wheel of the Dawson car was over the center line; that, although the trailer was only two weeks old at the time of the accident, it had been damaged, scratched and dented on the left side near the rear in a prior accident, while backing into a loading platform.

From this evidence it is obvious that the jury could find that Mr. Dawson drove his car into the back of the well lighted trailer, and that defendants were not negligent. Plaintiff, while recognizing that this is so, urges that the physical facts demonstrate, to a certainty, that the accident could not have happened as stated by Boyd and Krug; that, in view of the physical facts, their testimony is so inherently incredible and improbable that it must be disregarded; that from these physical facts the only conclusion possible is that the defendants were negotiating a U turn when struck, and were, therefore, guilty of negligence *per se*.

Plaintiff introduced into evidence various photographs of the damaged Studebaker taken shortly after the accident. She

points out that these photographs show that the Studebaker was crushed entirely across the front and from the bumper up. She argues that, since the bed of the truck was thirty-eight inches above the ground, it would be physically impossible to so damage the Studebaker by hitting the trailer from the rear because the hood of the automobile would have gone at least partially under the bed of the truck; that, therefore, the automobile must have struck the truck on its left side. She also points out that the photographs show the imprint of tires upon the right and left aprons of the crushed front fenders of the Studebaker. The photographs show that on the right apron of the Studebaker, just below the right headlight, there is the imprint of the word "Heavy." The evidence shows that the trailer was equipped with practically new tires which had the words "Heavy Duty" printed in raised letters on the sides of the tires. It is argued that this imprint could have been affixed to the apron only if the Studebaker hit the trailer from the side and could not have been affixed in a rear end collision.

These physical facts strongly support plaintiff's theory of the accident, but they do not demonstrate, as a matter of law, that these facts can be accounted for only on the theory advanced by her. The courts have frequently held that in most automobile accident cases arguments based on physical facts will not, as a matter of law, upset a jury verdict. In *Fishman* v. *Silva*, 116 Cal.App.1, at p. 3 [2 P.2d 473], it is stated: "It is needless to add, as in all such cases, there is presented a wide field for argument, the main theme of which is physical facts and the so-called immutable laws of physics. Contentions based on these foundations are usually not convincing, strange as it may seem, for the simple reason that in partisan presentation there is an ever-present temptation to forget essential facts which do not fit in. For instance, where it is argued that where there is a contact of two bodies in a given position, the direction of the applied force will control the position of the bodies after the impact, any rule or law, in the abstract, will be found of little value when we have the additional factors of each body in motion and controlled by independent agencies. Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors. Among these variants we may class indefinite rate of speed, condition of the highway, judgment or lack thereof in the drivers, a direct blow or a glanc-

ing one, and the balance of equilibrium of each car at the time of impact.'' (See, also, *Gardini* v. *Arakelian,* 18 Cal. App.2d 424 [64 P.2d 181]; *Corcoran* v. *Ward,* 115 Cal.App. 180 [1 P.2d 455]; *Roselle* v. *Beach,* 51 Cal.App.2d 579 [125 P.2d 77]; *Morris* v. *Fortier,* 59 Cal.App.2d 132 [138 P.2d 368].) There are many factors that were not made known to the jury, and which would have to be known before plaintiff's theory would be sound. The jury had no knowledge of the speed of the Dawson car. It had no way of knowing what occurred to the Dawson car just before the accident. All it knew was that after the accident the Dawson car, badly smashed, was behind the trailer in the southbound inside lane, and at an angle. Dawson may have tried to pass to the right and then changed his mind and turned sharply to the left, or he may have tried to pass to the left and turned sharply to the right. The Dawson car may have hit the rear of the trailer head on, or at an angle. In view of these possibilities this court cannot say, as a matter of law, that the Studebaker could have been damaged only in the way claimed by plaintiff. Had it crashed into the right rear of the trailer, it might have hit the right spring, axle and radius rod, and could have, in this fashion, received the damage shown in the photographs. The word ''Heavy'' could have been imprinted by the inside of the right dual rear tire. If this is the way the accident happened, it would explain the broken radius rod, the cut right rear inside tire, the broken glass on the tail light, and the broken tail gates. Plaintiff's argument does not fully explain this damage. It is obvious that while the jury could have found the accident occurred as claimed by plaintiff, it was not compelled to so find. There being other reasonable explanations, implied findings in favor of defendants cannot be disturbed.

Plaintiff also contends that the position of the truck-trailer after the accident, on the east side headed north, is the normal position in which it would have been, had it been hit while making a U turn. Boyd and Krug explained this factor to the evident satisfaction of the jury. Their explanation was not so incredible that, as a matter of law, it can be disregarded. Their credibility was for the jury.

Plaintiff next points out that, on the morning after the accident, heavy tire marks were observed in the dirt just off the west shoulder of the highway, which indicated that someone made a U turn at about that point. Some attempt was

made to identify the marks as having been made by the tires of defendants' truck. Evidence was offered that the tread marks in the mud were similar to the tread marks that would have been made by the tires on the truck-trailer, and that the tread marks were made by a vehicle equipped with dual wheels. These marks might have been made when the truck-trailer was "jackknifed" across the highway after the accident. The tires were of a brand in common use. The marks might have been made by another truck. Several other cars, including an ambulance and tow car, made U turns at about that spot after the accident. Under such circumstances, it was for the jury to determine whether to adopt plaintiff's or defendants' interpretation of these facts. The same can be said about certain mud and tire smudge marks on the highway immediately in front of where plaintiff's car stopped as disclosed by photographs and testified to by the police officers. These might very well have been made after the accident while the equipment was being cleared from the highway.

Plaintiff places some weight upon the testimony of one of the investigating police officers that there were scratches and dents on the side of the trailer. Both officers testified that the tail lights were intact, but admitted that the rear tail gates were knocked off in the collision. Krug testified that the scratches and dents on the side of the trailer were caused in a previous accident, which he described. Krug also described the damage to the rear of the trailer. Under such circumstances, the jury's implied finding in favor of defendants cannot be disturbed.

The plaintiff next points out that both investigating officers, testifying with the aid of their reports made out by them the night of the accident, stated that Boyd and Krug told them that the truck-trailer was in the process of making a U turn when struck. Both Boyd and Krug denied making such a statement, but testified that they told the officers of the two earlier U turns made by them. There was a direct conflict on this issue. The credibility of the witnesses was for the jury.

From what has been said, it is apparent that plaintiff's theory, while somewhat convincing, does not rebut, as a matter of law, the theory and explanation of defendants. The

plaintiff has not demonstrated, as a matter of law, that defendants' story is incredible. The jury was presented with two opposing theories, each credible, and each supported by material evidence. The burden of proof to show negligence was, of course, on plaintiff. The jury impliedly found defendants were not negligent. Under these circumstances, and under the rules above stated, that implied finding is binding on this court.

Plaintiff also argues that, as a matter of law, there was no evidence that her husband was guilty of contributory negligence. The argument is that there is a presumption that the deceased was acting as a reasonable and prudent man with due regard for his own safety (*Westberg* v. *Willde*, 14 Cal.2d 360 [94 P.2d 590]); that while this presumption is rebuttable, it is a species of evidence and unless controverted the jury must find in accordance with the presumption. It is contended that no evidence was introduced by defendants on this issue.

To these contentions there are two answers. In the first place, as already held, the jury would have been justified in finding that defendants were not negligent. If the jury did so find, and we must assume it did, the issue of contributory negligence was not involved. In the second place, there was enough evidence and reasonable inferences from that evidence, to justify the jury in holding that the presumption of due care on the part of deceased was rebutted. From the physical facts, the jury would have been justified in finding, even if defendants were negligent, that for Mr. Dawson to run into the back or side of a well lighted truck, on a straight wide highway, was contributory negligence.

Plaintiff next objects to the giving, or refusing to give certain instructions. The jury was instructed that the degree of care that should be exercised in the operation of a truck was that of a reasonable and prudent man, and that if Boyd was so operating the truck at the time of the accident, the verdict should be for defendants. If Boyd was not making a U turn in violation of a statute at the time of the accident, this was undoubtedly a correct instruction. Plaintiff urges that the instruction was erroneous because a violation of a statutory requirement was the basis of her case, and such violation cannot be excused upon the ground that the driver acted as a prudent man. Plaintiff cites *Duncan* v. *J. H. Corder & Son*, 18 Cal.App.2d 77 [62 P.2d 1387],

and *Nance* v. *Fresno City Lines, Inc.*, 44 Cal.App.2d 868 [113 P.2d 244], where the giving of similar instructions was held to be reversible error. It should be first pointed out that the jury was fully and fairly instructed on plaintiff's theory of statutory violation. The jury was told that if the defendants were making a U turn at the time of the accident, it was a violation of the statute; that violation of the statute was negligence as a matter of law; that if the jury should find such negligence was the sole proximate cause of the accident, it should find for plaintiff.

Neither of the above cited cases is controlling here. In the Nance case, the defendant was a common carrier. Obviously, an instruction setting up a standard of ordinary care was erroneous and prejudicial. In the Duncan case, the only theory involved was a violation of a statute. The defendant there admitted he had no horn and did not blow any horn, as required by statute, and the sole question was whether that admitted negligence was a proximate cause of the accident. The trial court refused to instruct on the violation, and gave an instruction on due care. The appellate court properly held it was prejudicial error to refuse to instruct on the violation of the statute, and that it was improper, under the facts, to give the reasonable care instruction. Such holding has no applicability here. The trial court properly instructed on two theories—first, if defendants were violating the statute, it was negligence as a matter of law, and second, if defendants were not violating the statute, whether they were negligent depended upon whether they were exercising reasonable care. Both sets of instructions were correct and both were properly given.

Plaintiff also urges that the due care instruction was a formula instruction, and contends that since it omitted all reference to the theory of a statutory violation it was incomplete and erroneous, citing *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 P. 1066]. She also contends the due care instruction was in conflict with the statutory violation instruction. The rigid rules formerly applicable to formula instructions have been greatly modified in recent years. Where the omitted element is fully, fairly and correctly covered by other instructions, and where, from a reading of the instructions as a whole, it is obvious that the jury was not misled, the failure to include one element in a formula instruction is not prejudicial. (*Reuter* v. *Hill*, 136 Cal.App. 67 [28

P.2d 390]; *Douglas* v. *Southern Pacific Co.*, 203 Cal. 390 [264 P. 237]; *Barham* v. *Widing*, 210 Cal. 206 [291 P. 173]; *Ramos* v. *Service Bros.*, 118 Cal.App. 432 [5 P.2d 623]; *Mahoney* v. *Murray*, 140 Cal.App. 206 [35 P.2d 612]; *Christiansen* v. *Hollings*, 44 Cal.App.2d 332 [112 P.2d 723].) That is exactly the situation in the instant case.

 Plaintiff next objects to an instruction which told the jury that certain unnamed witnesses ''sought here to give their views and versions as to how this accident happened— witnesses who did not see it. I instruct you, however, that since their versions or views were not permitted to disregard anything expressed by either, or any of them.'' This instruction was aimed at the two investigating officers and at an automobile mechanic. Various objections were properly sustained to questions propounded to the police officers calling for their opinion or conclusion. The mechanic attempted to give his opinion of how the radius rod was broken. Plaintiff, while conceding that objections to these questions were properly sustained, and that the jury was properly instructed to disregard such questions, objects to the above instruction on the ground that it told the jury to disregard all of their testimony. Although the instruction is awkwardly worded, it could not have misled the jury. Properly and reasonably interpreted, the instruction merely told the jury to disregard the improper questions.

 Plaintiff next contends that the instructions that were given as to the presumption of due care on the part of the deceased driver were prejudicially erroneous in that the trial court, after instructing that there was such a presumption, and that this presumption ''is in itself a species of evidence which continues with the plaintiff throughout the trial of this case and until overcome by contrary evidence,'' refused to add, as proposed, ''Such presumption must prevail and control your deliberations until and unless it is overcome by satisfactory evidence.'' *Olsen* v. *Standard Oil Co.*, 188 Cal. 20 [204 P. 393], is cited, and it is contended that the omitted language was taken verbatim from an instruction in that case which was upheld by the Supreme Court.

All that the Olsen case held was that it was not error to give the instruction, including the language in question. The case does not hold that it would be error to fail to include the questioned language. When the omitted language is compared with the given language it is at once apparent that,

had both been given, the instruction would have been tautological.

Objections are also made as to other instructions on various grounds. We have read the entire charge, including the challenged instructions. We are convinced that the charge, as a whole, was fair and complete. No prejudicial error was committed.

The judgments appealed from are affirmed.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 20, 1944. Carter, J., voted for a hearing.