[Civ. No. 14435. Second Dist., Div. Two. Sept. 13, 1944.]

DORIS BEE et al., Respondents, v. TUNGSTAR CORPORATION (a Corporation), Appellant.

730

George H. Moore, Hugh B. Rotchford and Robert E. Ford for Appellant.

Vernon W. Hunt and Francis B. Cobb for Respondents.

WOOD (W. J.), J.—Plaintiffs are the widow and minor child of Joseph Bee, who was killed February 17, 1942, while being transported on an aerial tramway operated by defendant. They allege that decedent's death was caused by the negligence of defendant; that the fall of the bucket in which he was riding was caused by the parting of the strands of a

cable at a point where the cable had been recently spliced by an employee of the defendant and that at the time of the accident decedent was an invitee on the premises of defendant. A jury returned a verdict in favor of plaintiffs and the appeal is from the judgment. There is also a purported appeal from an order denying defendant's motion for a new trial.

Defendant denies that decedent was an invitee and argues that he was merely a tolerated trespasser. It is also contended that no negligence was shown on the part of defendant, that decedent was guilty of contributory negligence as a matter of law, and that he assumed the risk and dangers incident to his trip on the tramway. In support of these contentions defendant points to testimony from some of the witnesses showing that decedent had been warned that the tramway was dangerous and had been given "instructions" not to ride on it. There was a sign at the bottom of the tramway reading: "Absolutely no riders on the tramway except maintenance men." But much other evidence was received by the court and we are satisfied that the evidence as a whole gives ample support to the findings of the jury, which are adverse to the contentions of defendant.

Defendant owned a mine, known as the Tungstar Mine, located at an elevation of about 13,000 feet on a mountainside near Bishop, California, and also owned and operated a mill located at an elevation of 7,200 feet. Ore from the mine was sent down to the mill in large buckets which rode on stationary cables stretched over towers and which were pulled by another cable, known as a moving or traction cable. It was the breaking of the traction cable which caused decedent's death. Each bucket carried 700 or 800 pounds of ore.

Decedent had originally been employed by defendant as a miner but at the time of his death he was engaged in extracting ore from the mine pursuant to a "memorandum" agreement made by himself with defendant on November 9, 1939. By this agreement decedent was required to deliver a minimum of 25 tons of ore each day the year around from the mine to the tramway for transportation to the mill. The weight of the ore was to be determined at the mill. The agreement did not provide for the manner of transporting decedent's employees or the supplies and materials to be used by him in performing his part of the agreement. Decedent had occasion

to go down to the mill to check the ore and for consultation with defendant's superintendent concerning the business. At the time he met his death decedent was en route back to the mine for the purpose of furthering the common business interests of himself and defendant. It had been a regular custom and practice for decedent, the mine employees and the employees and officers of defendant corporation, in addition to maintenance men, to ride in the tramway buckets as a means of transportation to and from the mine in both the summer time and winter time. The custom and practice of transporting men in the buckets had become so general that defendant had devised and put into practice a system designed to facilitate riding the tramway. This was done by means of signals and telephone calls. One of defendant's witnesses, Mr. Godsey, testified that when a man rode the tramway "you latched the bucket on with your hand, pulled it up to the cable and locked the person in," and that "the people operating down there are the ones that did that." He further testified that Mr. Anderson, defendant's tramway superintendent, was present when decedent entered the bucket on the day of his death and that he did not hear the superintendent or anyone else warn decedent not to ride the tramway. There had been a heavy snowfall four days prior to the accident, the weather was very cold and the snow was iced over. The trails were blocked because of snow. No one had walked from the mill to the mine for at least thirty days prior to the accident.

The evidence is ample to support the jury's implied finding that decedent was not a trespasser. He was engaged in furthering the mutual business of himself and defendant and in so doing took the only means of transportation which was available to him, the same means of transportation which was customarily used by defendant's officers and employees. The jury could readily find that decedent not only had permission of defendant to go to the mine by means of the aerial tramway but that his entry into the bucket was facilitated by defendant's superintendent. A finding by the jury that decedent was a business invitee could not be subject to successful attack. "An invitation or permission to enter upon land need not be express but may be implied from such circumstances as the conduct of the possessor, the arrangement of the premises, or local custom." (*Oettinger* v. *Stewart*, 24

Cal.2d 133, 136 [148 P.2d 19].)  ▮  Defendant knew of decedent's use of the tramway as a business invitee and owed to him the duty to exercise ordinary care for his safety. (*Oettinger* v. *Stewart, supra.*) That defendant failed in the discharge of its duty is shown by the fact that defendant's superintendent had, shortly before the accident, spliced the cable at the point where it broke. It was shown that splicing would have no effect upon the cable if the splicing had been properly done.

▮ Defendant cannot escape liability by claiming that decedent assumed the risk of injury to himself when he entered the bucket. One who assumes the risks of dangers ordinarily incident to the use of an instrumentality does not assume the risk of danger created by the negligence of others in maintaining or operating the instrumentality. (*Gornstein* v. *Priver,* 64 Cal.App. 249, 258 [221 P. 396].) Decedent had no knowledge or means of knowledge that the cable had been improperly spliced and did not assume the risk of negligence on the part of defendant's superintendent in splicing the cable. ▮ Nor can it be successfully claimed that decedent was guilty of contributory negligence as a matter of law in using the only means of transportation available, the means in common use by the various employees of the corporation.

▮ The court gave to the jury the following instruction: "The burden is upon the plaintiff to prove by a preponderance of evidence that a defendant was negligent and that such negligence was a proximate cause of the death of the deceased, Joseph Bee. If plaintiffs have not fulfilled this burden, the defendant is entitled to your verdict, and you need not consider the issue of contributory negligence. If, however, plaintiffs had fulfilled this burden as against the defendant, they are entitled to recover from such defendant unless the defense of contributory negligence has been established under the court's instructions. To establish this defense, the burden is upon the defendant to prove by a preponderance of evidence that the deceased was negligent and that such negligence contributed in some degree as a proximate cause of the injury. If this burden had been fulfilled, the defendant is entitled to your verdict. If not fulfilled, your decision on the issue of contributory negligence must be in plaintiff's favor. You are, however, to keep in mind the defense of

assumption of risk, which will be discussed later in these instructions.''

Defendant contends that it was prejudiced by the giving of the instruction above set forth, claiming that it is a formula instruction, and argues that the jury were told that plaintiffs could recover if negligence were proven, either active or passive, regardless whether decedent was a licensee or trespasser or invitee. It is not claimed that the instruction is incorrect in its statement of the law but the instruction is criticized because the obligations of defendant toward a trespasser and an invitee are not specifically set forth therein.

The court carefully instructed the jury on all phases of the case and particularly on the law applicable to trespassers and invitees and the duty owed by defendant to each of them. The doctrine of assumption of risk was correctly explained to the jury. The court also instructed the jury that they were to consider all of the instructions together and as a whole and were to harmonize them so far as possible. It was not necessary for the court to state all of these rules in one instruction. Indeed, in some cases and this appears to be one of them, the jury can be better informed by giving the instructions in several parts rather than by including many rules in one single instruction. Conceding, without deciding, that the questioned instruction is to be classified as a formula instruction, it is to be noted that in recent years the rigid rules formerly applicable to formula instructions have been greatly modified and where, as in the present case, the jury has been fairly and fully instructed and has not been misled or confused, a judgment should not be reversed because of the failure to include any one element in a formula instruction. (*Dawson* v. *Boyd,* 61 Cal.App.2d 471, 483 [143 P.2d 373].)

The judgment is affirmed. No appeal may be taken from an order denying a motion for a new trial and the purported appeal from that order is dismissed.

Moore, P. J., concurred.

McCOMB, J.—I dissent. From a judgment in favor of plaintiff, after trial before the court with a jury, in an action to recover damages for the wrongful death of Joseph Bee, husband of plaintiff Doris Bee and father of plaintiff

Josephine Bee, as a result of decedent being thrown from a tramway bucket when the puller cable parted, defendant appeals.

The undisputed facts are these:

Defendant owned and operated on aerial tramway between its mine and millsite, a distance of approximately 3½ miles. At the bottom of the tramway there was a sign 4 or 5 feet long and 3 feet wide which contained the following statement: "Absolutely no riders on the tramway except maintenance men."

Decedent Bee was an independent contractor who had agreed to deliver to defendant at the upper end of its tramway a minimum of 25 tons of ore per day, which ore was to be taken from defendant's mine. Mr. Phelps, superintendent of defendant's property for over a period of two years prior to February 17, 1942, told decedent on a number of occasions not to ride upon the tramway because it was dangerous and he might be killed. On the morning of February 17, 1942, Mr. Anderson, superintendent of defendant's tramway, told decedent not to ride the tramway as it was possible to walk to the mine. Despite these warnings decedent got in the tramway bucket and while it was traveling the puller cable parted and Mr. Bee was thrown from the bucket, receiving injuries which resulted in his death.

Defendant urges among other propositions *that it was prejudicial error for the trial judge to instruct the jury as follows:*

*"The burden is upon the plaintiff to prove by a preponderance of evidence that a defendant was negligent and that such negligence was a proximate cause of the death of the deceased, Joseph Bee. If plaintiffs have not fulfilled this burden, the defendant is entitled to your verdict, and you need not consider the issue of contributory negligence. If, however, plaintiffs had fulfilled this burden as against the defendant, they are entitled to recover from such defendant unless the defense of contributory negligence has been established under the court's instructions. To establish this defense, the burden is upon the defendant to prove by a preponderance of evidence that the deceased was negligent and that such negligence contributed in some degree as a proximate cause of the injury. If this burden has been fulfilled, the defen-*

*dant is entitled to your verdict. If not fulfilled, your decision on the issue of contributory negligence must be in plaintiff's favor. You are, however, to keep in mind the defense of assumption of risk, which will be discussed later in these instructions.*"

This proposition is tenable for the reason that the foregoing instruction is a formula instruction which does not contain all the essential elements necessary to establish defendant's liability. The instruction failed to advise the jury as to the duty of care defendant owed decedent if the jury found decedent to be a licensee;[1] it likewise failed to advise the jury as to the duty of care defendant owed decedent if they found him to be a trespasser;[2] nor did the instruction advise the jury as to the duty of care defendant owed decedent should they find him to be an invitee.[3] Since defendant's duty toward decedent was different under each of the three relationships mentioned, it was important that the jury be advised as to the duty of care owed by defendant to decedent under each of the different factual situations which the jury might find to exist, and the failure of the formula instruction to contain such information was prejudicial.

The rule is clearly established in California that a "formula" instruction must contain all the elements essential to a recovery, and the error resulting from the omission of any essential element is not cured by a reference thereto in other instruction correctly and fully stating the law. (*Ebrite* v. *Crawford*, 215 Cal. 724, 729 [12 P.2d 937]; *Jordan* v. *Great Western Motorways*, 213 Cal. 606, 609 [2 P.2d 786]; *Barham* v. *Widing*, 210 Cal. 206, 217 [291 P. 173]; *Douglas* v. *Southern Pacific Co.*, 203 Cal. 390, 393 [264 P. 237]; *La Rue* v. *Powell*, 5 Cal.App.2d 439, 440 [42 P.2d 1063].)

For the foregoing reasons the judgment in my opinion should be reversed.

Appellant's petition for a hearing by the Supreme Court was denied November 9, 1944. Edmonds, J., voted for a hearing.

[1]See *Lindholm* v. *Northwestern Pac. R. Co.*, 79 Cal.App. 34, 37 [248 P. 1033]. Also, *Brust* v. *C. J. Kubach Co.*, 130 Cal.App. 152, 161 [19 P.2d 845].
[2]See *Albers* v. *Shell Co.*, 104 Cal.App. 733, 738 [286 P. 752].
[3]See *Dyer* v. *McCorkle*, 208 Cal. 216, 219 [280 P. 965].